Daniel ARNOLD, Petitioner,

v.

Donald RUMSFELD, Secretary of Defense, and Martin Hoffman, Secretary of the Army, Respondents.

No. 76 C 1410.

United States District Court,
E. D. New York.

Aug. 3, 1976.

Frederick Cohn, New York City, for petitioner.

David G. Trager, U. S. Atty., Eastern District of N. Y., Brooklyn, N. Y., Constance M. Vecellio, Asst. U. S. Atty., Brooklyn, N. Y., of counsel, for respondents.

## MEMORANDUM AND ORDER

PRATT, District Judge.

This habeas corpus proceeding was assigned to Judge Neaher of this court, who on July 29, 1976 denied petitioner's request for a temporary restraining order. Judge Neaher did, however, permit the motion for a preliminary injunction to be accelerated so that the matter came before the undersigned, sitting as the Miscellaneous Part Judge, for argument on August 2, 1976. Upon the argument, the parties agreed that all available evidence was before the Court so that the application for a preliminary injunction and the disposition of the merits of the case may be consolidated. The following shall constitute the Court's findings of fact and conclusions of law.

Petitioner, Captain Daniel Arnold (hereinafter "Arnold") a physician specializing in oncology, or the treatment of cancer, volun-

tarily accepted a reserve commission in the United States Army on February 2, 1972 under the provisions of the Armed Forces Physicians' Appointment and Residency Consideration Program (Berry Plan), under which the Army permits physicians to defer their active military service commitment until after they complete residency training in their specialty.

In order to be eligible for the Berry Plan, Arnold subscribed to the following agreement:

"I hereby agree and consent that, if I am appointed a Reserve officer in the medical * * * corps * * *, I shall serve on active duty for a period of two consecutive years upon expiration of the period of delay in being ordered to active duty to complete residency or other post doctoral training." (Defs.' Ex. 1, p. 105)

As early as 1972, Berry was programed by the Army for entry on active duty after July 1, 1976 (Defs.' Ex. 1, p. 116). Following the customary pattern of the Berry Plan, Arnold was given annual delays so as to enable him to complete his specialty training. With each application for a delay, he reaffirmed his agreement to serve two years on active duty.

Having completed his specialty training, Arnold has now been ordered to report for entry on active duty on August 4, 1976 at Fort Sam Houston, Texas. On April 5, 1976, Arnold applied not for further delay, but for a complete exemption from his active duty commitment. The ground of his application was that he was essential to the cancer program of Montefiore Hospital in the Bronx, and that a community hardship would be created if he were to report for active duty. Arnold's employment by Montefiore Hospital commenced in early July of 1976, well after the date of his application for exemption. He has now been working at Montefiore Hospital for approximately one month and has performed what clearly appear to be important and much needed services in that hospital.

In his application letter, Arnold stated: "I fully realize that I received a substantial benefit in being deferred in order to complete my training, and that I have incurred an obligation which should be honored. As I understand it, however, that obligation is to my country and not merely to the United States Army. From a medical point of view, I believe that obligation would be better served by my staff position than if I were to actually be in the service." (Defs.' Ex. 1, pp. 18–19)

Similar contentions in support of Arnold's exemption request were advanced by numerous medical professionals, both in Montefiore Hospital and outside the hospital.

The initial response to Arnold's application for exemption was a letter dated April 22, 1976 from Major Schuyler (Defs.' Ex. 1, pp. 21–22). In it, Major Schuyler reminded Arnold of his acceptance of the commission under the Berry Plan and the extensions of delays up to June 30, 1976 in order to permit him to complete residency training in oncology. He also reminded Arnold of his agreement to serve two years upon completion of professional training. Major Schuyler noted that there are no contractual provisions under the Berry Plan whereby a physician may be released from his active duty obligation in order to enter private practice in a community unless the active Army declares him to be excess to its needs or unless a valid hardship is substantiated. With respect to the former, Major Schuyler stated: "You are not excess as there is a critical need for your medical skills in the active Army."

Requests for hardship exemptions are processed by the Army Delay and Exemption Board. Major Schuyler outlined the criteria to be applied by that board in reviewing requests for exemption from active duty based on a claimed community hardship. Those criteria were the following:

a. The service performed by the officer is essential to the maintenance of health, safety or welfare of this community.

b. The service cannot be performed by other persons residing in the area concerned.

c. Prior to the date scheduled to report for active duty, the officer cannot be replaced in the community by another person who can perform such services.

d. There is a reasonable assurance that the officer can be replaced in the community within the authorized period of delay.

Additional information was invited and subsequently supplied by Arnold, whereupon the Army Delay and Exemption Board reviewed the request and denied it. The Board's findings were that Arnold was not essential to the community he wishes to serve for the following reasons:

a. There are several other oncologists at the Montefiore Hospital, where he wishes to practice, and in the New York area generally.

b. Physicians generally, particularly those trained in the various specialties, are trained to diagnose and treat cancer.

c. Insofar as the Bronx may be viewed as the relevant community, Dr. Arnold has not provided oncology services in that community on a regular basis. He was not providing them at the time of application for exemption.

The Board noted that Arnold was scheduled to report August 4, 1976 to Fort Sam Houston, Texas, thence to be assigned to Dwight D. Eisenhower Army Medical Center, Fort Gordon, Georgia effective August 29, 1976.

Arnold then appealed to the Adjutant General, who by letter dated July 28, 1976, decided as follows:

"His appeal, the letters submitted in behalf of the community served by the Montefiore Hospital, and the findings and recommendations of the Board have been carefully considered. The medical support requirements of the Bronx community and contribution that Captain Arnold may make in filling a staff physician position at the Montefiore Hospital are appreciated. However, it is the policy of the Army to require that the medical service actually being performed by a physician when requesting exemption based on community hardship, be one that cannot be performed by other physicians residing in the area. When the request for exemption of Captain Arnold from reporting to active duty was initially submitted by you on 5 April 1976, the officer was not then employed by the Montefiore Hospital or performing a regular service in his specialty for residents of the Bronx. Further, it cannot be said in this instance that there are no other physicians or medical facilities located in the New York City area that can render this specialized service to cancer patients.

"The purpose of the Army's community hardship provision in regulations is not to reallocate the medical resources of the country but to insure that vital health services are not completely disrupted by the removal of an individual who cannot be replaced. In this case there can be no question as to replacement as Captain Arnold was not practicing his specialty at the Montefiore Hospital at the time of your initial request for his exemption from performing active duty with the Army.

"While the services of this officer may be desirable at Montefiore Hospital, as well as other medical facilities in the country, it is clear that the residents of the Bronx will continue to receive approximately the same care that they have been receiving in the past and not be denied the benefits of a medical specialty by his reporting to active duty. Vital health services will continue without disruption and the Oncology Department of the Montefiore Hospital will continue to function in his absence. Therefore, his appeal is denied." (Ex. 11)

Arnold then brought this proceeding to test the Army's right under the circumstances here presented to require him to fulfill his voluntary commitment for two years' active service.

■ Judicial review of military matters is sharply circumscribed. With respect to a case of this type, which seeks to review a community hardship decision under the Berry Plan, the Court's review is limited to determining whether the action taken (a) was violative of the applicable regulations

or (b) was so arbitrary and unreasonable that it cannot stand. *Roth v. Laird*, 446 F.2d 855 (CA 2 1971).

On the argument here, petitioner's attorney conceded he was not raising any question as to violation of regulations. His contention was that the record afforded no rational basis for denial of Arnold's and Montefiore's request for permanent exemption. On this record, however, the Court cannot agree with petitioner's contention.

Unquestionably, Arnold and the doctors who wrote in support of his application sincerely believe that a greater public good might come from Arnold's serving the next two years at Montefiore Hospital rather than in a military capacity. If this Court were competent to make the kind of judgment required to determine that delicate balance, this Court might also conclude in favor of Arnold's continued civilian practice. The heart of the issue, however, is that this Court is not competent to make that judgment. As noted by the Supreme Court in *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953), "[J]udges are not given the task of running the Army." *Id.* at 93, 73 S.Ct. at 540. The Supreme Court noted there that the military constitutes a specialized community governed by a separate discipline from that of the civilian and concluded that orderly government requires the judiciary to be scrupulous not to interfere with legitimate Army matters. See also *Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973).

Addressing itself specifically to the hardship exemptions, the Second Circuit stated in *Roth v. Laird, supra,* 446 F.2d at 856:

> "[A]dministration of the hardship exemption necessarily involves a balancing of the individual's claim against the nation's needs, and the balance may differ from time to time and from place to place in a manner beyond the competence of a court to decide  *  *  *. [T]his is a subject on which civil review of discretionary action by the military should be declined."

■ Focusing more specifically on petitioner's claims here, one of them is that the Board and the Adjutant General adopted an irrelevant criterion when they pointed out that Arnold was not practicing with Montefiore Hospital at the time of his application. But the standard is not irrelevant; it is specifically prescribed by government regulation (AR 601–25 ¶ 2–19 a[1]). Other cases have also confirmed denials of hardship requests on the ground that the applicant was not practicing in the area at the time of the application. *Sofranko v. Froehlke*, 346 F.Supp. 1380 (W.D.Tex.1972); *Turner v. Commander, United States Army Reserve*, 416 F.Supp. 1116 (N.D.Ohio, 1976).

■ The other part of petitioner's argument is that the determination denying his exemption request lacks any supporting evidence. This contention must fail. Each of the facts and conclusions cited by the Board and the Adjutant General is supported either by evidence in the record of proceedings or by common sense. None of them has been shown to be false. The most that can be said is that the petitioner and the Army reviewing officials have drawn different conclusions from essentially undisputed facts.

Had this Court been the reviewing officer, it might well have reached a different conclusion. On the present record, however, it is impossible to conclude that the determination actually reached by the Army reviewing officials was "so arbitrary and unreasonable that it cannot stand." *Roth v. Laird, supra,* 446 F.2d at 856. Accordingly, the motion for a preliminary injunction is denied and the petition dismissed.

SO ORDERED.