James M. CUNNINGHAM, M. D.

v.

Martin R. HOFFMAN, Secretary of the Army, and Major Linden E. Schuyler.

No. 76–53–NE–CV.

United States District Court, M. D. Tennessee, Northeastern Division.

Sept. 22, 1976.

---

Jon E. Jones, Maddux, Moore & Jones, Cookeville, Tenn., for plaintiff.

Charles H. Anderson, U.S. Atty., and William H. Farmer, Asst. U.S. Atty., Nashville, Tenn., John W. Matthews, Washington, D. C., for defendants.

## MEMORANDUM

FRANK GRAY, Jr., District Judge.

On August 26, 1976, a motion for a temporary restraining order was filed in this court to prevent the respondents from requiring the petitioner to enter upon active duty in the United States Army. Since the petitioner's orders did not require him to report until September 8, 1976, the court denied the request for a temporary restraining order and set a hearing for September 3, 1976, on petitioner's request for a writ of habeas corpus and for a permanent

injunction. After arguments were heard from both sides on September 3, 1976, the court took the case under advisement, and the defendants agreed to delay the petitioner's entrance on active duty until such time as the court issued its opinion.

The question presented by the habeas corpus petition is whether the petitioner, a general surgeon, should have been exempted by the Army from an active duty obligation he incurred in exchange for a deferment he received earlier, which deferment enabled him to complete his training as a doctor. The basis for his claim of exemption is one of community hardship, a claim which is recognized in certain circumstances by the Army [Defense Department Instruction 1205.1; Army Reg. 601–25, *infra*].

On September 30, 1971, the petitioner was commissioned as a reserve officer in the United States Army. His active duty was deferred at that time under the Berry Plan, Army Reg. 135–50, under which selected physicians are permitted to complete their medical training. After the completion of their training, Berry Plan physicians are obligated to submit themselves for active duty for a period of two years.

On March 2, 1976, the petitioner wrote the Army the following from his home in Pasadena, California:

"At this time I have decided to abandon my plans to pursue further surgical training and would like to request a waiver of my military obligation in order to return to Smithville to provide the surgical services the community requires and obviously deserves." [Resp.Ex. A–26.] [1]

On April 12, 1976, the petitioner entered private practice in Smithville, Tennessee [Pet.Ex. C–3]. On May 25, 1976, the Army forwarded the petitioner's file to the Board responsible for examining applications for exemptions [Resp.Ex. A–15]. The Board denied the petitioner's request on June 4, 1976, stating that, at the time of the application (March 2, 1976), the petitioner had never performed medical services in Smithville, Tennessee, and was not therefore essential to the community at that time [2] [Resp.Ex. A–11, 12, 13, 14]. The petitioner's appeal to the Adjutant General was denied on August 6, 1976, and he was ordered to report for active duty on September 8, 1976.

The petitioner asserts that the denial of his community hardship exemption was arbitrary and capricious, without a basis in fact, and contrary to the applicable regulations. More specifically, he asserts that (1) the time upon which a determination of community hardship should be based is the date he received his active duty orders, at which time he had begun practicing in Smithville, and (2) if the date of application for an exemption is the crucial point in time, he did not apply until May 21, 1976, when the Army received a second letter from him requesting an exemption along with the necessary documentation.

■ Judicial review of military actions has been defined by two different standards. While the Court of Appeals for the Fifth Circuit has set forth a basis in fact test, *United States ex rel. Hutcheson v. Hoffman*, 439 F.2d 821 (5th Cir. 1971), the Court of Appeals for the Second Circuit has defined the scope of review in the following manner: "The district court may review action taken by military authorities to insure that it is not violative of applicable regulations, . . . or to insure that their decision is not so arbitrary and irrational that it cannot stand . . . ." *Roth v. Laird*, 446 F.2d 855, 856 (2d Cir. 1971). Since both of petitioner's claims hinge upon his contention that the Army failed to follow its own regulations in making its determination that the petitioner had not practiced in the community, it is

---

1. The petitioner recited in his letter that Smithville General Hospital had 30,000 active patient charts, but that the nearest surgical team was some 70 miles away.

2. Army Regulation 601–25, ¶ 2–19, *infra*, denies a physician a community hardship exemption

unless he has practiced in the community. This regulation has been upheld as reasonable. *E. g., Appelwick v. Hoffman,* 540 F.2d 404 (8th Cir. 1976); *Sofranko v. Froehlke,* 346 F.Supp. 1380 (W.D.Tex.1972).

not necessary that the court choose between the two standards. If the Army acted contrary to its regulations, such·a violation would render its determination arbitrary and irrational and without any basis in fact. However, in deciding whether the Army failed to follow its own regulations, the court is further restricted by cases permitting military authorities to interpret their own regulations as long as their interpretations are reasonable. *Pifer v. Laird,* 328 F.Supp. 649, 651 (N.D.Cal.1971), citing *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Thus, if the applicable regulations were interpreted in a reasonable manner, the charge of procedural irregularity must fail even though the petitioner may present another reasonable interpretation of the regulations.

The petitioner's first claim points toward an apparent inconsistency in a Department of Defense Instruction and an Army Regulation. Department of Defense Instruction 1205.1 reads in part as follows:

"Upon receipt of active duty orders any reserve officer and/or his employer may submit a request for a delay in entrance on active duty and/or exemption from active duty to a board authorized by the military department concerned to consider such cases."

The corresponding Army Regulation, 601–25,[3] reads in part as follows:

¶ 2–19:

"b. Physicians and dentists who are not at the time of application performing the health service needed by the community or who have never performed on a regular basis in a community which is alleged to suffer hardship are not eligible for delay or exemption."

**3.** This regulation, which went into effect on May 15, 1976, superseded Army Regulations 601–25 (Dec. 15, 1967), 601–26 and all Army Messages. If the earlier promulgations were to be applied in this case, the result would not be altered. Army Message 1415332 reads in part as follows:

¶ 2: "b. Requests from physicians, dentists, and allied specialists will be disapproved and ruled non-essential to communities where they have never practiced.

¶ 2–20:

"a. Request for exemption or delay in entering on active duty for essentiality or community hardship will be submitted . . . as soon as the hardship occurs."

The Defense Department Instruction sets out the time for determination of community hardship as the date of receipt of active duty orders; the regulation pinpoints the crucial date upon which the doctor must have established his practice in the relevant community as the date of application. Since the petitioner was practicing in Smithville on the date he received his active duty orders, the Board's finding was arbitrary and irrational as well as without a basis in fact if the Defense Instruction is determinative.

■ This problem was recently addressed by the Court of Appeals for the Eighth Circuit in *Appelwick v. Hoffman,* 540 F.2d 404 (8th Cir. 1976). The *Appelwick* court wrote:

"Finally, we cannot accept Appelwick's argument that because he started practice in Madison while pursuing his administrative and judicial remedies, he is now in compliance with the Army's regulation and must be granted relief. Were we to accept appellant's argument, the Army's 'regular practice' requirement would be a nullity. Any reserve officer could avoid the requirement simply by applying for the exemption and starting practice pending a decision. We think it entirely reasonable for the Army to insist that the officer applying for a community hardship exemption comply with the 'regular practice' requirement on the date of his application to the Army for exemption."[4]

¶ 4: "Applying for exemption/delay. Request for exemption or delay in entering on active duty for essentiality or community hardship will be submitted . . . as soon as the hardship occurs."
These provisions thus seemed aimed at pinpointing the time of the request as the crucial date, rather than the date of receipt of active duty orders.

**4.** The *Appelwick* court further supported its decision as follows:

The Eighth Circuit has thus determined that a reasonable interpretation of the applicable provisions makes the date of application the time when a Berry Plan physician must establish community hardship, and this court so holds.

The petitioner's second contention relates to the Army's use of his March 2, 1976, letter as his application. Specifically, he alleges that such treatment is contrary to the applicable regulation which characterizes an application for community hardship in part as follows:

"Applying for exemption/delay.

a. Request for exemption or delay in the entry on active duty for essentiality or community hardship will be submitted . . . as soon as the hardship condition occurs. The application may be submitted in writing by the officer and/or employer and will include as a minimum the following documentary evidence." [Army Reg. 601–25, ¶ 2–20.]

The petitioner alleges that the language, "include as a minimum," means that until such documentation is received no application has been submitted. In support of this allegation, the petitioner contends that the Army did not treat his March 2, 1976, letter as an application. In opposition to this ground, the respondent contends that the language does not require extensive documentation before a request for exemption can be regarded as an application, and that

the Army did treat the March 2, 1976, letter as an application.

▮▮▮ Since, as noted above, the Army is always given "[the] first crack at interpreting its own regulations," *Pifer v. Laird,* 328 F.Supp. 649, 651 (N.D.Cal.1971), the Army's interpretation of an application cannot be disturbed if such interpretation is reasonable. In defense of its interpretation, the Army argues that, if the petitioner's position were adopted, any Berry Plan physician could request a community hardship exemption, move to a community which has few doctors, and submit the necessary documentation only when he had set up a regular practice in a rural community. Since the Berry Plan and the community hardship exemption were not designed to accomplish the redistribution of medical services to needy areas, *see Sofranko v. Froehlke,* 346 F.Supp. 1380, 1382 (W.D.Tex.1972), the court finds it difficult to say that the Army's interpretation was unreasonable.

▮▮▮ The petitioner's argument that the Army did not treat his March 2, 1976, letter as an application does little to change the court's opinion concerning the reasonableness of the interpretation, although it does point out some absurdities in the Army's treatment of the petitioner's request.[5] The communications between the parties are at best in conflict and appear to be weighted toward the respondent's position. Petitioner's letter of March 2, 1976, suggests that he intended it to be an application since he

"It is not at all certain that the Defense Department Instruction was intended to do more than establish procedural forms, leaving the formulation of substantive rules to the military departments. General authority to order members of reserve components in medical, dental, or allied specialties who have not served at least one year of active duty, and who are under 35 years of age, to active duty for not more than two years is vested in the President by 50 U.S.C.App. § 454(*I*)(1)(1970). The President delegated his authority to the Secretary of Defense in Executive Order No. 10762, 23 Fed. Reg. 2119, March 28, 1958. This authority was redelegated to the secretaries of the three military departments, *see* 32 C.F.R. § 76.6 (1975). This statutory and administrative pattern appears to give the Army the power to establish whatever substantive guidelines it deems desirable. As noted above, there is nothing on the

face of the D.o.D. Instruction inconsistent with the Army's formulation of substantive standards to be applied. For the purposes of this opinion, however, we will assume that the D.o.D. Instruction does impose some substantive limits on the Army's rulemaking authority." Appelwick, p. 407, n. 5.

5. This court fails to understand why the Army wrote the petitioner on March 23, 1976, telling him the documentation necessary to substantiate the exemption request. The petitioner's letter of March 2, 1976, clearly failed to state a *prima facie* case for exemption, nor could he have stated a *prima facie* case since he was not then practicing in Smithville. The logical route to take would have been to convene the required board and to summarily deny his application.

wrote: "At this time . . . I would like to request a waiver of my military obligation in order to return to Smithville. . . ." [Resp.Ex. A–26.] Similarly, the Army's reply informing the petitioner that his letter had been sent to the proper center "for determination"[6] [Resp.Ex. A–28] suggests that the letter was treated as an application. Major Schuyler's letter of March 23, 1976, to petitioner is somewhat ambiguous. That letter lists the requirements for a community hardship exemption and the documentation "needed to substantiate such a request, but closes with a paragraph which lends support to the petitioner's charge that the letter was not an application: "You are required to inform this Center should you decide to drop your residency deferment. Upon receipt of such a decision, you would be nominated for entrance on active duty." [Resp.Ex. A–30.] However, the letter does not appear to be markedly different from a letter mailed to another petitioner in response to his application for a community hardship exemption in *Arnold v. Rumsfeld*, 418 F.Supp. 146 (E.D.N.Y.1976).[7] The district court in *Arnold* did not require all documentation to be submitted before the petitioner's request was considered an application: "Additional information was invited and subsequently supplied by Arnold, whereupon the Army Delay and Exemption Board reviewed the request and denied it." *Id.* at 148. The petitioner's own letter of May 17, 1976, further supports this conclusion since it reads in part: "Once again, I would like to request a waiver of my military obligation." [Resp.Ex. A–32.]

■ Finally, the affidavit of Edward R. Schaefer, of the Reserve Components Personnel and Administration Center, is not, as petitioner alleges, totally inconsistent with the Army's position [Resp.Ex. J]. The affidavit recites that the application was not complete at Schaefer's office until May 21, 1976. Although the application was not complete until that time, the application could have been made earlier in March, as suggested in *Arnold v. Rumsfeld, supra.* Similarly, the respondent contradicts petitioner's argument that the Army considered the application complete on May 21, 1976, because on that date it received petitioner's second request for an exemption dated May 17, 1976. The respondent's explanation is that the petitioner's letter of May 17, 1976, indicated further documentation would not be forthcoming, so that the Army had to make do with what was already in the file [Resp.Ex. A–15; Resp. Letter, Sept. 8, 1976].

■ When all the evidence is viewed with deference given to the Army's interpretation of its own regulations, this court cannot say that the Army's actions were in error. Under a reasonable interpretation of the applicable regulations, the petitioner had never practiced in Smithville at the time he filed his application for exemption.

The petitioner's request for a writ of habeas corpus and for a permanent injunction is, therefore, DENIED and the action DISMISSED.

Judgment will enter accordingly.

6. The petitioner's letter of March 2, 1976, was addressed to the wrong office. It should have been addressed to the Commander, United States Army Reserve Components Personnel and Administration Center.

7. The letter in *Arnold* reminded the petitioner of his obligation, outlined the criteria to be applied by the Board in reviewing requests for exemptions, and invited the submission of additional documentation just as did Major Schuyler's letter in the instant case. The *Arnold* court made no mention of a last paragraph such as the one quoted above.