WRONKE, Kenneth L., Plaintiff,

v.

MARSH, John O., in his capacity as Sec. of Army; McGiffert, Lt. General John R., in his capacity as Commander of Fifth Army of USA; Printen, General Kenneth, in his capacity as Commander of 30th General Hosp., US Arm Reserve; Brewer, Col. Robert L., USA Reserve Beachem, Lt. Col. Paul J., US Army Rosengard, Lt. Col Dennis D. and Delannoy, Lt. Col. Clarence W., U.S. Army Reserve, Defendants.

No. 83–2339.

United States District Court,
C.D. Illinois,
Danville Division.

Feb. 28, 1985.

As Amended April 24, 1985.

J. Steven Beckett, Reno, O'Byrne & Kepley, Champaign, Ill., for plaintiff.

Charlene A. Quigley, Asst. U.S. Atty., Danville, Ill., Lt. Colonel Charles R. Fulbruge II, Lt. Col. Joyce E. Peters, Dept. of the Army, Washington, D.C., for defendants.

ORDER

BAKER, Chief Judge.

## I. FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

The plaintiff, Kenneth L. Wronke, was a major in the United States Army Reserve until May 27, 1982, when he received a General Discharge for violating Army Regulation (AR) 135–175 Paragraphs 2–12(d) and 2–12(o), because he had misrepresented his qualifications as a military pilot in endeavoring to obtain a commercial pilot's license from the Federal Aviation Administration (FAA) and because his conduct was unbecoming an officer.

After the plaintiff received his commercial pilot's license from the FAA in October 1977, the FAA became aware that Wronke was not a "Rated Army Aviator", as he represented in his license application. His civilian commercial pilot's license, therefore, was revoked in August 1978 and the plaintiff was not allowed to apply again for the commercial license for one year. The revocation was upheld by the National Transportation Safety Board (NTSB) in November 1978; it determined, however, that the plaintiff had not acted willfully in his misrepresentations, and therefore he could apply again for the civilian license without waiting a year. Wronke did so apply and he subsequently received a civilian commercial pilot's license.

On December 7, 1979, the plaintiff was notified by the Commander of the Fifth Army that an Officer Elimination Action had been initiated against him because of his violations of Paragraphs 2–12(d) and 2–12(o) of AR 135–175. The Elimination Board after considering testimony and exhibits, voted unanimously on January 10, 1981, to recommend Wronke's elimination from the United States Army Reserve with a General Discharge under Honorable Conditions. The Board's recommendation was reviewed and accepted by the Commander of the Fifth Army. In June, 1982, the plaintiff received a discharge order effective June 14, 1982.

On July 2, 1982, the plaintiff filed a complaint with this court, No. 82–2218, seeking declaratory and injunctive relief. Wronke alleged that the Army had violated its own regulations in convening and carrying out the Elimination Board's hearing; Wronke also challenged the hearing proceedings on procedural and substantive due process grounds. In an opinion accompanying the dismissal without prejudice of the plaintiff's action, the court found that the plaintiff had not exhausted his intraservice administrative remedies under 10 U.S.C. § 1552 as he had not appealed the Elimination Board's decision to the Army Board for Correction of Military Records (ABCMR). The court further found that a preliminary injunction was not warranted, as the court was unable to find irreparable injury or absence of an adequate remedy at law. *See* Order of July 29, 1982, No. 82–2218. The Court of Appeals for the Seventh Circuit affirmed this court's decision in an unpublished order, No. 82–2248, entered June 1, 1983. 714 F.2d 147.

Pending the appeal to the Seventh Circuit, the plaintiff sought review from the ABCMR. On April 8, 1983, a memorandum of consideration and decision of the ABCMR was issued to the plaintiff, denying the plaintiff's request for correction of his military records to show that the action taken to discharge him from his commission in the United States Army Reserve was void and of no force or effect. On August 11, 1983, the plaintiff again filed a complaint with this court. On October 2, 1984, the plaintiff moved for summary judgment; on December 3, 1984, the defendants' cross-moved for summary judgment in favor of the defendants, stating that there is no genuine issue as to any material fact and that the defendants are entitled to a judgment as a matter of law.

## II. JURISDICTION

The plaintiff alleges that this court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, in that the controversy arises under the constitution and laws of the United States. This is an action pursu-

ant to 28 U.S.C. § 2201 and 2202 to secure declaratory relief, and to secure equitable relief pursuant to 5 U.S.C. § 705. The court finds that it has jurisdiction under these provisions. The court also notes that the Mandamus Act, 28 U.S.C. § 1361, gives the district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to the plaintiff." *Flynn v. Shultz,* 748 F.2d 1186, 1189 (7th Cir.1984). Courts have held that this statute confers jurisdiction over a suit for declaratory and injunctive relief from a discharge allegedly made in violation of Army regulations. *Konn v. Laird,* 460 F.2d 1318, 1319 (7th Cir.1972); *Jones v. Alexander,* 609 F.2d 778, 781 (5th Cir.1980) *cert. denied* 449 U.S. 832, 101 S.Ct. 100, 66 L.Ed.2d 37 (1980); *Woodard v. Marsh,* 658 F.2d 989, 992 (5th Cir.1981). The statute also confers jurisdiction over allegations that the Army failed to perform duties imposed by the Constitution. *See Konn,* 460 F.2d at 1319 (the failure of the Army to follow its own regulations constitutes a deprivation of due process, and mandamus is available to remedy the consequences thereof); *see also Woodard,* 658 F.2d at 992. This court, therefore, has jurisdiction over Wronke's claims for declaratory and injunctive relief.

This court also has jurisdiction over Wronke's monetary claims. The Tucker Act gives district courts original jurisdiction of a "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the constitution, or any Act of Congress, or any regulation of an executive department...." 28 U.S.C. § 1346(a)(2). In an amendment to his complaint, filed February 13, 1984, Wronke waived all claims for damages in excess of $9,999.99. Therefore, the court has jurisdiction of his monetary claims.

### III. REVIEWABILITY

Having determined that this court possesses jurisdiction to hear this case, the question becomes whether the court should review the military decision to terminate the plaintiff's position in the United States Army Reserve. Decisions of the ABCMR "denying corrective action" are reviewable by the federal courts. *See Diliberti v. Brown,* 583 F.2d 950, 952 (7th Cir.1978); *Ballenger v. Marsh,* 708 F.2d 349, 350 (8th Cir.1983); *Neal v. Secretary of Navy,* 639 F.2d 1029, 1036–37 (3rd Cir.1981); *Matlovich v. Secretary of Air Force,* 591 F.2d 852, 859 (D.C.Cir.1978); *Hodges v. Callaway,* 499 F.2d 417, 423 (5th Cir.1974); *Sanford v. United States,* 399 F.2d 693, 694 (9th Cir.1968). In determining whether to review internal military decisions, a federal court should first determine whether the plaintiff has exhausted his intraservice administrative remedies and has properly alleged that the military has violated the constitution, a statute, or its own regulations; second, the court must balance sufficiency of the complaint against the policies contravening for review. *Mindes v. Seaman,* 453 F.2d 197, 201–02 (5th Cir.1971). *See Helm v. State of California,* 722 F.2d 507, 509–10 (9th Cir.1983); *Rucker v. Secretary of Army,* 702 F.2d 966, 969 (11th Cir.1983); *Nieszner v. Mark,* 684 F.2d 562, 563–64 (8th Cir.1982), *cert. denied* 460 U.S. 1022, 103 S.Ct. 1273, 75 L.Ed.2d 494 (1983); *Johnson v. Reed,* 609 F.2d 784, 789 (5th Cir.1980). As the plaintiff has appealed the Elimination Board's decision to the ABCMR and the appeal was denied, the plaintiff has exhausted his intraservice administrative remedies pursuant to 10 U.S.C. § 1552. The plaintiff has also properly alleged that the Elimination Board and the ABCMR violated his rights under the Constitution and that they violated their own regulations.

In balancing the sufficiency of the complaint against the policies contravening review, the district court must look to the following factors: (1) the source and weight of the plaintiff's challenges; (2) the injury to the plaintiff if relief is denied; (3) the amount of interference with military matters if relief is granted; and (4) the degree to which expertise and discretion is involved. *See Mindes,* 453 F.2d at 201–02;

*Rucker,* 702 F.2d at 969; *Johnson v. Reed,* 609 F.2d at 789.

Wronke's claim is a substantial one. The substance of Wronke's claims is that the Elimination Board failed to follow the proper hearing procedures in deciding his case. More specifically Wronke claims the Elimination Board failed to follow Army regulation 135–175 Para. 2–5(a), which would have required a finding that he had not in fact violated AR 135–175 Pars. 2–12(d) and 2–12(o). Review is particularly appropriate where a challenged action is alleged to have violated a particular service's own regulation. *See Konn v. Laird,* 460 F.2d at 1319; *Hickey v. Commandant of Fourth Naval District,* 461 F.Supp. 1085, 1091 (E.D.Pa.1978). Wronke's claim of violation of due process stems directly from the question whether he was entitled to certain rights under the applicable Army regulations and for this court to make that determination it would have to go no further than an examination of the Army regulations.

As to the second factor, injury to the plaintiff if relief is denied, this court finds that the harm that would flow to the plaintiff is substantial, and would include reduction or elimination of certain veteran benefits, loss of promotion, and of course, discharge from the Army Reserve itself.

As to the third factor, the amount of interference with military matters if relief is granted, the court finds that any interference would be minimal as any order to be issued from this court would only require the Army to follow its own regulations.

As to the fourth factor, the degree to which military expertise and discretion is involved, the language of the regulations regarding the procedures and standards to be employed during the Elimination Board hearing does not involve any military expertise and the Elimination Board's discretion in the implementation of the regulations is limited.

The court, therefore, finds that Wronke's claims of violation of due process and Army regulations are appropriate for review.

## IV. MERITS

Once it has been determined that review is proper, the standard for review of actions and procedures of a Military Records Corrections Board is whether the actions and procedures were arbitrary, capricious, unsupported by substantive evidence, or contrary to law and regulation. *See Dilley v. Alexander,* 603 F.2d 914, 920 (D.C.Cir.1979); *Nolen v. Rumsfeld,* 535 F.2d 888, 890 (5th Cir.1976), *cert. denied* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977); *ben Shalom v. Secretary of Army,* 489 F.Supp. 964, 971 (E.D.Wisc.1980); *Kalista v. Secretary of Navy,* 560 F.Supp. 608, 612 (D.Colo.1983); *Dumas v. The President of the United States,* 554 F.Supp. 10, 16 (D.Conn.1982). Review of the actions and procedures of the ABCMR is not limited to the record of the Corrections Board; the record of previous precedings before other military bodies may also be reviewed. *See Kalista,* 560 F.Supp. at 612.

While the plaintiff's complaint for declaratory and injunctive relief raises numerous claims for violation of the plaintiff's rights under the Fifth Amendment due process clause as well as concerning the Elimination Board's failure to follow several different Army regulations, this court will focus on only one claim of the plaintiff which the court finds to be dispositive of the case at hand.

AR 135–175 Para. 2–5(a) provides that "no officer will be considered for elimination for the reasons in Paragraph 2–11 or 2–12 because of conduct that has been the subject of judicial proceedings resulting in an acquittal based on the merits of the case or in an action having the same effect." In proceedings before the NTSB, concerning the revocation of the plaintiff's commercial pilot's license by Administrative Law Judge Fowler on October 27, 1978, the revocation of the license was upheld by the NTSB. An order by the ALJ that prohibited the

plaintiff from applying for a new license for a one-year period was vacated, however. The NTSB stated that:

In the absence of any probative evidence that respondent's application was based on a deliberate intent to mislead the FAA,[14] we are not persuaded that barring a new application for a full year would serve any meaningful safety purpose.

[14] Rather, it appears the application was more the result of a lack of understanding of pertinent FAA and military standards.

See NTSB Opinion and Order, No. EA–1211 (adopted November 13, 1978).

The plaintiff claims that in the officer elimination action before the Elimination Board, the substance of the charged offenses against the plaintiff required proof of intentional misrepresentation or knowing fraudulent conduct. The plaintiff states that the finding the NTSB that there was no probative evidence that the respondent's application to the FAA was based on any deliberate intent to mislead, has the same effect as an acquittal and under AR 135–175 Par. 2–5(a) should therefore serve as a bar to the elimination action. The ABCMR specifically found, however, that the "decision made by that Board [NTSB] was not binding on the military". See ABCMR Memorandum of Consideration and Decision, Docket No. AC82–10426 (January 12, 1983) at 6.

The defendants claim that the ABCMR and Elimination Board were not bound by the NTSB decision. They state that "[t]here is no doctrine of administrative collateral estoppel, and the board of officers was not bound by the independent although related findings of the NTSB." See Memorandum of Points and Authorities in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment, at 23. The defendants allege that the NTSB proceedings were not judicial proceedings, and they were also not "an action having the same effect" under the provisions of AR 135–175, Para. 2–5(a). Defendants opine that the thrust of the provision is to prevent an elimination action against an officer who has been successful in judicial proceedings whether as the result of an acquittal or of some other action, such as a dismissal at trial on certain motions that have the same effect.

Although a district court's scope of review is limited where military decisions are involved, a court may review such decisions to insure that military regulations are followed. White v. Callaway, 501 F.2d 672, 674 (5th Cir.1974); Wells v. Commander of Third Battalion, 441 F.Supp. 336, 339 (E.D.Mo.1977). Where the meaning of a regulation is in question, the Army's own interpretation of its regulations must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. See Harris v. Brown, 470 F.Supp. 250, 253 (W.D.Mo.1979) (citing U.S. v. Larionoff, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977)); see Hodges v. Callaway, 499 F.2d at 423 (Army ought to be primary authority for the interpretation of its own regulations). If the applicable regulations are interpreted by the Army in a reasonable manner, any charge of procedural irregularity must fail even though the petitioner may present another reasonable interpretation of the regulations. See Cunningham v. Hoffman, 420 F.Supp. 325, 328 (M.D.Tenn.1976). Thus where a military regulation is susceptible to equally reasonable constructions, a court may not substitute an alternative interpretation for the interpretation of the military service. See McCourt v. Culkin, 473 F.Supp. 1247, 1250 n. 6 (E.D.Pa.1979) (citing Keister v. Resor, 462 F.2d 471 (3rd Cir.1972), cert. denied 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 151 (1972)).

The court, however, does not find the Army's interpretation of AR 135–175 Para. 2–5(a) to be a reasonable interpretation and the court instead finds that the Army's interpretation is plainly erroneous and inconsistent with the wording of the regulation. The court has examined the opinion and order of the NTSB and finds it to be "an action having the same effect" as a "judicial proceeding resulting in an ac-

quittal based on the merits". The court finds the defendants' reading of AR 135–175 Para. 2–5(a) to be untenable. It is apparent to the court that the "action having the same effect" phrase in the paragraph refers to proceedings with results that are similar to judicial proceedings resulting in an acquittal based on the merits. The opinion and order of the NTSB is such an action and therefore any finding by that body would be binding upon the Elimination Board and the ABCMR under Para. 2–5(a).

In the NTSB proceedings it was found that there was an absence of any probative evidence that Wronke's application to the FAA for a commercial pilot license was based on any deliberate intent to mislead the FAA and was more the result of the lack of an understanding of pertinent FAA and military standards. The charges against plaintiff Wronke in the Board's elimination hearing, whose decision to eliminate the plaintiff was subsequently approved by the ABCMR, were based on AR 135–175 Paras. 2–12(d) and 2–12(o). Paragraph 2–12(d) states that an officer may be eliminated from the Army Reserves where he has committed an "intentional omission or misstatement of facts in official statements or records, for the purpose of misrepresentation." The finding by the NTSB, that there was no probative evidence that Wronke's application was based on a deliberate intent to mislead, bars under AR 135–175 Para. 2–5(a) a finding that Wronke "intentionally omitted or misstated facts and official statements or records for the purpose of misrepresentation." AR 135–175 Par. 2–5(a) operates to estop a finding by the Elimination Board and the ABCMR that Wronke intentionally omitted or misstated facts in his application for a commercial pilot's license for the purpose of misrepresentation of his past military flying record.

The plaintiff Wronke was also charged under AR 135–175 Para. 2–12(o), which states that reserve officers may be eliminated for "conduct unbecoming an officer." The defendants have argued that even if the findings by the NSTB are determined

to estop the application of 2–12(d) to Wronke, the NTSB determination still does not estop any decision by the Elimination Board that Wronke's conduct was unbecoming an officer. The defendants claim that the Elimination Board considered other questionable conduct of Wronke besides the application for the commercial pilot's license in its determination that he committed conduct unbecoming an officer. An examination of the transcript of the Elimination Board hearing, however, demonstrates that the Elimination Board determined that Wronke had committed conduct unbecoming an officer because he had intentionally misstated his service flight record for the purpose of misrepresenting himself to the FAA. *See* Officer Elimination Board Hearing Transcript, *In the Matter of: Major Kenneth L. Wronke* (January 10, 1981) at 213–227. As the substance of the Elimination Board's finding of conduct unbecoming an officer relied on the determination that plaintiff Wronke had deliberately intended to mislead the FAA, the findings of the NSTB also operate, pursuant to AR 135–175 Para. 2–5(a), to estop the Elimination Board's determination that Wronke had committed conduct unbecoming an officer.

## V. CONCLUSION

The court finds that the ABCMR and the Elimination Board failed to follow AR 135–175 Para. 2–5(a), which required them to give full faith and credit to the determination of the NTSB that Wronke had not deliberately intended to mislead the FAA in his application for a commercial pilot's license. If the Elimination Board and the ABCMR had complied with AR 135–175 Para. 2–5(a), the charges against Wronke would have been dismissed. The discharge order given to the plaintiff, effective June 14, 1982, is therefore vacated. The defendants are ordered to reinstate the plaintiff to all rank and privileges to which he would have been entitled but for the proceedings before the Elimination Board and his subsequent discharge. The defendants are also ordered to tender to the plaintiff all

back pay owed to him not exceeding the amount of $9,999.99. The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.