**Kenneth L. WRONKE, Appellee,**

v.

**John A. MARSH, as Secretary of the Army, et al., Appellants.**

**Appeal No. 85–2629.**

United States Court of Appeals, Federal Circuit.

April 4, 1986.

J. Steven Beckett, of Reno, O'Byrne & Kepley, Champaign, Ill., argued, for appellee.

John S. Groat, of the Commercial Litigation Branch, Civ. Div., Dept. of Justice, Washington, D.C., argued, for appellants. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Thomas W. Petersen, Asst. Director. Of counsel were Major Charles W. Beardall and Lt. Col. Joyce E. Peters, of the Office of the Judge Advocate Gen., Dept. of the Army.

Before MARKEY, Chief Judge, and SMITH and NEWMAN, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a judgment of the District Court for the Central District of Illinois, vacating the discharge from the United States Army Reserve (USAR) of Kenneth L. Wronke (Wronke), ordering him reinstated with all rank and privileges to which he would have been entitled had he not been discharged, and awarding him back pay not to exceed $9,999.99. 603 F.Supp. 407 (C.D. Ill.1985). We reverse.

### Background

In October 1977, Wronke, then a non-rated commissioned officer (Major) in the USAR, applied to the Federal Aviation Administration (FAA) for a civilian pilot's Certificate. Applying under a regulation that waived a flight test for rated military pilots, he presented an Army Flight Record indicating that he had been a rated Army Aviator since November 1967 and had flown 10 hours with his Reserve unit during the preceding month. He also furnished an order showing that he had been placed on flight status by his Reserve unit. Based on those documents, he was given merely a written test by the FAA and was issued a temporary Airman Certificate.

In May 1978, the FAA requested Wronke's USAR Commander to verify his flying status. After checking Wronke's records, the Commander advised the FAA officials that Wronke had never been a rated Army Aviator.

The FAA issued an emergency revocation of Wronke's Certificate, and Wronke obtained an FAA hearing in September 1978. Wronke testified that he was placed on flight status in 1967 while he was in Vietnam, but never saw the order; that his military records were incomplete; that the 10 hours flown with his Reserve unit were flown partly in his own aircraft. The FAA's Administrative Law Judge concluded that he was not a military rated pilot, and did not qualify for a Certificate based on such qualification. The ALJ permanently revoked his Certificate and placed a one-year ban on his making further application.

Wronke appealed the FAA revocation of his certificate to the National Transportation Safety Board (NTSB), which affirmed the revocation on November 13, 1978. In its opinion, NTSB pointed out:

(a) Wronke had obtained the Certificate on the basis of military piloting record data and therefore without a flight test under § 61.73 of the Federal Aviation Regulations, the regulation governing applications by *rated military pilots.*

(b) Neither of the two military aircraft he claimed to have flown were in service during the period involved.

(c) Safety in the air and the public interest required affirmation of the revocation.

(d) Though Wronke submitted documents showing his rating in fixed wing aircraft on November 28, 1967 and in rotary wing aircraft on April 16, 1976, and an invalid Special Order confirming his "aviator profile", Wronke is not a military rated pilot.

NTSB modified the one-year ban on re-applying, however, saying:

In the absence of any probative evidence that respondent's application was based on a deliberate intent to mislead the FAA,[14] we are not persuaded that barring a new application for a full year would serve any meaningful safety purpose. Furthermore, respondent's extensive use of the privileges of an airman certificate would aggravate the effect of

a full year's grounding.[15] We also note that the Administrator's counsel, both during interrogation at the hearing and in his reply brief, has indicated a willingness to shorten the 1 year period of ineligibility. In view of the above circumstances, we believe respondent should be allowed to re-apply for appropriate airman certification, in the standard manner rather than under section 61.73, and we urge the Administrator to consider any such application submitted by respondent following issuance of this order.

---

[14] Rather, it appears the application was more the result of a lack of understanding of pertinent FAA and military standards.

[15] Respondent is a fixed base operator, and also flies frequently in his occupation as a veterinarian and in his continuing affiliation with the military reserve.

On November 5, 1979, Wronke was recommended for discharge from the USAR under Army Regulation (AR) 135–175 for conduct unbecoming an officer, falsification of official military records, and fraudulent preparation of the two documents he had submitted to the FAA.

On January 10, 1981, Wronke, with counsel, appeared before a Board of Officers (Elimination Board) to show cause why he should not be discharged. Wronke testified that he had served in Korea with the Navy as an underwater demolition technician; that after he was commissioned, he served in Vietnam, and was attached to the 184th Recon Airplane Company; that his duty was Veterinarian; that he did fly while attached to the 184th; that he flew during the Tet offensive when they were caught unaware and they needed him; that he flew 230 missions in the OH 13 aircraft; that he never saw orders designating him a pilot; that he did not receive flight pay. Other military personnel testified that a Flight Record (DA Form 759, one of Wronke's fraudulently prepared documents) had not been prepared on Wronke; that he was not a rated military pilot; that it would have been improper to prepare a Flight Record for him; and that Wronke's records do not show that he was ever at-

tached to the 184th Recon Airplane Company.

The Board of Officers unanimously found that Wronke had engaged in conduct unbecoming an officer when he: (1) intentionally submitted a false official statement for the purpose of misrepresentation to the FAA; (2) supplied inaccurate information to persons in his organization for use in preparation of orders; (3) failed in his obligation as an officer to recognize and correct official records of his qualifications; (4) adopted records containing misleading and inaccurate information and presented them to a government body for purposes of obtaining a pilot's license on the basis of a non-existent military pilot rating. The board recommended Wronke's general discharge under honorable conditions. Wronke received that discharge, to be effective June 14, 1982.

On July 2, 1982, Wronke sued in the District Court. That suit was dismissed for failure to exhaust military remedies. Wronke appealed to the Court of Appeals for the Seventh Circuit, which affirmed the dismissal.

While the appeal was pending in the Seventh Circuit, Wronke applied to the Army Board for Correction of Military Records (ABCMR), seeking to vacate his discharge and relying primarily on the NTSB's statement that his "application was more the result of a lack of understanding of pertinent FAA and military standards." In April 1983, the ABCMR found Wronke's

1. The district court may not have had called to its attention that NTSB was dealing only with the one year restriction, that Wronke needed a Certificate as a fixed base operator, and that FAA's counsel had recommended lifting the restriction, and that the restriction was deemed unnecessary as a *safety* measure. The gratuitous statement that Wronke did not intend to mislead when he submitted falsified records to get a Certificate without a flight test (when no reason other than intent to mislead, such as accident, was presented) was uncritically accepted, as was the notion that a field grade officer of many years' service did not understand military standards.

2. Wronke was eliminated for violations of paragraphs 2–12(d) and 2–12(*o*) of Section II of AR

conduct unbecoming that of an officer, held that the NTSB's statement was not binding on the Army, and, after reviewing the entire record, refused to vacate Wronke's discharge.

On August 11, 1983, Wronke sued again in the district court, where the parties lodged cross motions for summary judgment.

### *The District Court's Decision*

The district court rested its decision on two foundations. The first was this part of NTSB's statement about the one-year reapplication restriction:

> In the absence of any probative evidence that respondent's application was based on a deliberate intent to mislead the FAA,[14] we are not persuaded that barring a new application for a full year would serve any meaningful safety purpose.

---

[14] Rather, it appears the application was more the result of a lack of understanding of pertinent FAA and military standards.[1]

The second foundation was the district court's interpretation of paragraph 2–5(a) of AR 135–175:

> 2–5(a) No officer will be considered for elimination for the reasons in paragraph 2–11 or 2–12 because of conduct that has been the subject of judicial proceedings resulting in an acquittal based on the merits of the case or in an action having the same effect.[2]

135–175, "REASONS WHICH REQUIRE ELIMINATION":

2–12. *Moral or professional dereliction.* While not all-inclusive, existence of one of the following or similar conditions, unless successfully rebutted, authorizes elimination of an officer due to moral or professional dereliction. Officers discharged for any of the following reasons may be furnished an Honorable, General, or Other Than Honorable Discharge Certificate:

\* \* \* \* \* \*

(d) Intentional omission or misstatement of facts in official statements or records, for the purpose of misrepresentation.

\* \* \* \* \* \*

(*o*) Conduct unbecoming an officer.

The district court recognized the Army's interpretation of paragraph 2–5(a):

> The defendant alleges that the NTSB proceedings were not judicial proceedings, and they were also not "an action having the same effect" under the provisions of AR 135–175, Para. 2–5(a). Defendants opine that the thrust of the provision is to prevent an elimination action against an officer who has been successful in judicial proceedings whether as the result of an acquittal or of some other action, such 'as a dismissal at trial on certain motions that have the same effect.

603 F.Supp. at 412. The court also recognized the established rules governing judicial review of the Army's interpretation of its own regulations:

> Where the meaning of a regulation is in question, the Army's own interpretation of its regulations must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. (Citations omitted.) If the applicable regulations are interpreted by the Army in a reasonable manner, any charge of procedural irregularity must fail even though the petitioner may present another reasonable interpretation of the regulations. (Citation omitted.) Thus where a military regulation is susceptible to equally reasonable constructions, a court may not substitute an alternative interpretation for the interpretation of the military service. (Citation omitted.)

Nonetheless, the court went on to say that the Army's interpretation was unreasonable, plainly erroneous, inconsistent with the regulation and untenable. Substituting its own interpretation, the court held that NTSB's statement was binding on the Army:

> The court, however, does not find the Army's interpretation of AR 135–175 Para. 2–5(a) to be a reasonable interpretation and the court instead finds that the Army's interpretation is plainly erro-

neous and inconsistent with the wording of the regulation. The court has examined the opinion and order of the NTSB and finds it to be "an action having the same effect" as a "judicial proceeding resulting in an acquittal based on the merits". The court finds the defendants' reading of AR 135–175 Para. 2–5(a) to be untenable. It is apparent to the court that the "action having the same effect" phrase in the paragraph refers to proceedings with results that are similar to judicial proceedings resulting in an acquittal based on the merits. The opinion and order of the NTSB is such an action and therefore any finding by that body would be binding upon the Elimination Board and the ABCMR under Para. 2–5(a).

In the NTSB proceedings it was found that there was an absence of any probative evidence that Wronke's application to the FAA for a commercial pilot license was based on any deliberate intent to mislead the FAA and was more the result of the lack of an understanding of pertinent FAA and military standards. The charges against plaintiff Wronke in the Board's elimination hearing, whose decision to eliminate the plaintiff was subsequently approved by the ABCMR, were based on AR 135–175 Paras. 2–12(d) and 2–12(*o*). Paragraph 2–12(d) states that an officer may be eliminated from the Army Reserves where he has committed an "intentional omission or misstatement of facts in official statements or records, for the purpose of misrepresentation." The finding by the NTSB, that there was no probative evidence that Wronke's application was based on a deliberate intent to mislead, bars under AR 135–175 Para. 2–5(a) a finding that Wronke "intentionally omitted or misstated facts and official statements or records for the purpose of misrepresentation." AR 135–175 Para. 2–5(a) operates to estop a finding by the Elimination Board and the ABCMR that Wronke in-

> (p) When one or more of the reasons in *a* through *n* above is. alleged and the circumstances on which they were based indicated

that the reason in *o* above also is involved, it will constitute additional reason for requiring elimination.

tentionally omitted or misstated facts in his application for a commercial pilot's license for the purpose of misrepresentation of his past military flying record. *Id.* at 412–13. The district court concluded the opinion accompanying its order with:

> As the substance of the Elimination Board's finding of conduct unbecoming an officer relied on the determination that plaintiff Wronke had deliberately intended to mislead the FAA, the findings of the NTSB also operate, pursuant to AR 135–175 Para. 2–5(a), to estop the Elimination Board's determination that Wronke had committed conduct unbecoming an officer.

The court rejected the Army's argument that the paragraph 2–12(*o*) charge of conduct unbecoming an officer was based on more than the paragraph 2–12(d) charge, saying the 2–12(*o*) charge was also based on Wronke's submission of a fraudulent flight record for the purpose of misrepresenting himself to the FAA.[3] *Id.* at 413.

The district court then granted Wronke's motion for summary judgment.

### The Appeal

The Army appealed to the Court of Appeals for the Seventh Circuit. Realizing that Wronke had limited damages to bring his case within the Tucker Act, 28 U.S.C. § 1346(a)(2), the Army moved for transfer of the appeal to this court. Over Wronke's objection, the Court of Appeals granted the motion and transferred the appeal to this court under 28 U.S.C. § 1631. *Wronke v. Marsh*, 767 F.2d 354 (7th Cir.1985).

### ISSUE

Whether the district court erred in granting Wronke's motion for summary judgment.

#### (1) *Introduction*

A military officer's commission states that the President reposes "special trust and confidence" in the qualities of the per-

son commissioned. Military commanders must make numerous decisions in reliance on information and records supplied by subordinate officers. Decisions made on false information lose not just battles, but lives.

In the present case, a military reserve officer indisputably falsified official military records. He was discharged. The district court ordered the Army to restore his commission in the belief that the Army had violated its own regulation, as the court interpreted that regulation. The case thus turns on the correctness of the court's interpretation of the regulation.

### OPINION

#### (1) *Paragraph 2–5(a)*

##### (a) *English Grammar*

As in the interpretation of statutes, *Board of Governors v. Dimension Financial Corp.*, —— U.S. ——, ——, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986), we begin, as we must, with the plain language of the regulation. *General Electric Co. v. United States*, 610 F.2d 730, 734, 221 Ct.Cl. 771 (1979). Neither the district court nor Wronke has anywhere stated that that language is unclear or ambiguous, and it is neither. Nor has either the district court or Wronke suggested any basis or need for looking outside the regulation for clarification. Neither has asserted that the regulation was contrary to statute, or was issued without authority, or that the Army's interpretation is contrary to congressional intent.

The district court simply misread paragraph 2–5(a), the key phrase of which it saw as "judicial proceedings resulting in an acquittal based on the merits of the case or in an action having the same effect." Under the standard rules of grammar, *see* Leggett, Mead & Charvat, *Prentice-Hall Handbook for Writers* (6th ed. 1974); S. Baker, *The Complete Stylist and Hand-*

---

**3.** The court did not discuss paragraph 2–12(p), *supra*, note 1. Nor did it refer to findings (2) and (3) of the Board of Officers, *supra*.

*book* (3rd ed. 1984), the noun "proceedings" is restricted by the adjective "judicial", and the entire phrase must be read as limited to *judicial proceedings. See* C.D. Sands, *Sutherland Statutory Construction,* § 47.17 (4th ed. 1973).

The present participle "resulting" relates to "judicial proceedings" and is followed by two modifying paralleled prepositional phrases "in an acquittal" and "in an action", separated by the disjunctive "or". Those elements must therefore be read as "resulting in an acquittal or resulting in an action".

The phrase "based on the merits of the case" modifies "acquittal", and "having the same effect" modifies "action". Because "acquittal" and "action" are interchangeable objects of the preposition "in", the wording, though it would be more cumbersome, could just as well have been "resulting in an action having the same effect as an acquittal or in an acquittal." The rules of English grammar require that "the same effect" be read as "the same effect as an acquittal".

■ With otherwise unnecessary words inserted for understanding, therefore, the entire phrase must under the rules of English grammar be read as "judicial proceedings resulting in an acquittal based on the merits of the case or *judicial proceedings resulting* in an action having the same effect *as an acquittal based on the merits of the case*".

Only one type of "proceedings" is present in paragraph 2–5(a), and those are "judicial" proceedings. Even then, only those judicial proceedings that have one of two specified results are applicable: those judicial proceedings that result in an acquittal on the merits; and those judicial proceedings that result in an action having the same effect as an acquittal on the merits.

In constructing its interpretation, the district court said it *found* that the "opinion and order of the NTSB" is "an action having the same effect", and that "an action having the same effect" refers to "proceed-

ings with results that are similar to judicial proceedings resulting in an acquittal based on the merits". As findings, interpretive or otherwise, those findings are clearly erroneous. As an interpretation, they amount to error as a matter of law. First, those findings/interpretation totally disregard the order of the paragraph's wording. Second, they totally disregard the preposition "in" before "an action". Third, they create without warrant a second "proceedings" noun and inject it into a single sentence dealing only with *judicial* proceedings.

The formulation envisaged by district court would have the key phrase of paragraph 2–5(a) read: "judicial proceedings resulting in an acquittal based on the merits of the case or an action having the same effect as judicial proceedings resulting in an acquittal based on the merits of the case". The difficulty is two-fold. First, neither English usage, nor fairness to the drafter of the regulation, can countenance disregard of the second preposition "in" and its tie to "judicial proceedings resulting". Second, the court's formulation will not fit the rest of the paragraph, in which "judicial proceedings" is preceded by "conduct that has been the subject of". It is simply impermissable to re-write the single sentence constituting paragraph 2–5(a) by replacing the second "in" with "the subject of".

It would, of course, have been possible for the Army to have written paragraph 2–5(a) as:

> No officer will be considered for elimination for the reasons in paragraph 2–11 or 2–12 because of conduct that has been the subject of judicial proceedings resulting in an acquittal based on the merits of the case, or that has been the subject of other proceedings with results that are similar to judicial proceedings resulting in an acquittal based on the merits.

But the Army did not write its regulation that way. On the contrary, it wrote a single sentence, easily understood as standard English usage.

No warrant, no reason, no rule of grammatical construction, and no legislative or regulatory history supports the reading of that sentence adopted by the district court, and the court gave none in its opinion. Nor did the court supply any textual or legal analysis supporting its reading of the regulation.

■ On the basis of English grammar, the district court erred in its reading of paragraph 2–5(a) of AR 135–175. It based its holding that the Army was bound by NTSB's view on that erroneous reading and that holding must therefore be reversed.

### (b) *The Army's Interpretation*

■ The Army interpreted paragraph 2–5(a) of its own regulation as limited to judicial proceedings. That interpretation was entitled to judicial deference. *United States v. Clark,* 454 U.S. 555, 565, 102 S.Ct. 805, 811, 70 L.Ed.2d 768 (1982). That deference was especially appropriate here, where the Army was determining the suitability of a commissioned officer. *Maier v. Orr,* 754 F.2d 973, 984 (Fed.Cir.1984) (fitness for duty); *see Orloff v. Willoughby,* 345 U.S. 83, 93, 73 S.Ct. 534, 539, 97 L.Ed. 842 (1953) (judges not given the task of running the Army). In *Wallace v. Chappell,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1982), the Supreme Court observed that "the special relationships that define military life have 'supported the military establishment's broad power to deal with its own personnel. The most obvious reason is that courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have.'" *Id.* at 305, 103 S.Ct. at 2367 (citation omitted); *see Williams v. Secretary of the Navy,* 787 F.2d 552, 560–62 (Fed.Cir.1986). In light of that "broad power," the district court should have afforded the Army's interpretation of AR 135–175 great deference in a matter as sensitive as the continued suitability of Wronke to serve as a commissioned officer. On this record, the district court erred as a matter of law in refusing to grant the deference normally due the Army's interpretation of its own regulation.

### (c) *The ABCMR Determination*

■ Under the precedent in this court, Wronke was bound by the ABCMR's determination that he was unsuitable, unless he established that that determination was arbitrary, capricious, contrary to law, or unsupported by substantial evidence, *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed. Cir.1983); *Sanders v. United States,* 594 F.2d 804, 811, 219 Ct.Cl. 285 (1979), and unless he did so by "cogent and clearly convincing evidence." *Dorl v. United States,* 200 Ct.Cl. 626, 633, *cert. denied,* 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973). Wronke made no effort to meet that burden and the district court did not discuss it.

### (d) *Wronke's Presentation on Appeal*

■ Ignoring the district court's total focus on paragraph 2–5(a), Wronke attempts to buttress the judgment appealed from with general assertions of collateral estoppel. In arguing that the Army was estopped from considering his suitability, Wronke presumes a non-existent relationship between the NTSB's parenthetical remarks about his intent before the FAA and the charges brought against him by the Army, which included falsification of Army records. The NTSB never addressed Wronke's intent in falsifying those Army records, nor, of course, did it address his conduct as an officer or his fitness to continue serving as one. The NTSB proceeding, at which the Army was not fully represented, and which had nothing to do with Wronke's suitability as an Army officer could not possibly constitute an estoppel requiring the Army to retain Wronke.

Wronke offers no textual or legal arguments in support of the district court's interpretation of paragraph 2–5(a), but is content to attack the Army's interpretation as "highly technical and purportedly grammatical" and as merely "trying to move the words and phrases." That attack is totally lacking in merit.

Wronke's arguments for district court jurisdiction on a basis other than 28 U.S.C. § 1346(a)(2) are simply wrong. *See Lee v. Thornton,* 420 U.S. 139, 140, 95 S.Ct. 853, 854, 43 L.Ed.2d 85 (1975); *Sherwood v. United States,* 312 U.S. 584, 591, 61 S.Ct. 767, 772, 85 L.Ed. 1058 (1941).

## CONCLUSION

The district court erred as a matter of law in interpreting paragraph 2–5(a) of AR 135–175 as not limited to judicial proceedings. Its judgment must therefore be reversed. Because the appeal is from a summary judgment, the case must be remanded for such further proceedings not inconsistent with this opinion as the district court may deem necessary.

REVERSED and REMANDED.