NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MICHAEL YOUNG,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2012-5112

---

Appeal from the United States Court of Federal Claims in case no. 11-CV-231, Judge George W. Miller.

---

Decided: December 11, 2012

---

MICHAEL E. YOUNG, Las Vegas, Nevada, pro se.

AUSTIN M. FULK, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director.

---

Before RADER, *Chief Judge*, LOURIE and WALLACH, *Circuit Judges.*

PER CURIAM.

Plaintiff-Appellant Michael E. Young instituted the underlying action at the United States Court of Federal Claims ("Claims Court") asserting claims surrounding his discharge from the United States Air Force. Defendant-Appellee Government filed a motion to dismiss under Rule of the Court of Federal Claims ("RCFC") 12(b)(6) or, alternatively, for judgment on the administrative record under RCFC 52.1. The Claims Court granted the Government's motion as to Mr. Young's wrongful discharge and denial of promotion claims. *Young v. United States*, No. 11-CV-00231, 2012 WL 758058 at *1 (Fed. Cl. Mar. 6, 2012). In addition, the Claims Court, sua sponte, dismissed Mr. Young's claims for equitable relief for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) and 12(h)(3). *Id.* On appeal, because the Claims Court considered matters beyond Mr. Young's pleadings, we treat the decision as a judgment on the administrative record. We affirm the dismissal of this case.

## BACKGROUND

Mr. Young was an active duty serviceman in the United States Air Force ("AF"). His service began on April 1, 1987, and after reenlisting on several occasions, Mr. Young had a date of separation from active duty of April 12, 2005. In July 2002, Mr. Young was notified that he had been selected for a reassignment or "Permanent Change of Station" ("PCS") to Eielson Air Force Base ("AFB"), Alaska, from Nellis AFB, Nevada. He was the most eligible non-volunteer from a list of candidates. Mr. Young was informed of a "report not later than date" of January 30, 2003 with a projected tour length of thirty-six months at Eielson AFB. He was also informed of a "relo-

cation briefing" with the military personnel office or Military Personnel Flight scheduled to be held on July 16, 2002. Mr. Young did not attend the relocation briefing.

Because his projected length of tour was expected to last past his date of separation by approximately nine months, Mr. Young was informed of his obligation to obtain retainability pursuant to Air Force Instruction ("AFI") 36-2110. AFI 36-2110 governs retainability, among other things, and states, in part:

> Retainability is obligated active military service. D[epartment of Defense] and the AF prescribe minimum retainability requirements for PCS to ensure the AF receives repayment for the costs associated with PCS, training, or other actions, to provide mission continuity at the gaining unit, to provide stability to Airmen and their families after PCS, or to satisfy some other AF requirement.

AFI 36-2110 ¶ 2.29 (Sept. 22, 2009), available at http://www.e-publishing.af.mil/shared/media/epubs/ AFI36-2110.pdf. In other words, a service member must have or be able to obtain certain minimum periods of obligated service upon selection for PCS. Declining to obtain retainability for a PCS renders a service member *ineligible to extend his or her enlistment, to be promoted, or to reenlist for a specified period following discharge. See* AFI 36–2110 ¶ 2.29.6.3.1.

On January 14, 2003, approximately six months after notification of his PCS assignment, Mr. Young was ordered: (1) to contact the gaining unit's section superintendent at Eielson AFB; and (2) to contact outbound assignment at Nellis AFB by the next day, January 15, 2003, to report on the status of his pending PCS order. Mr. Young did not contact the gaining unit or the outbound assignment on January 15, 2003.

On January 17, 2003, upon meeting with Military Personnel Flight officials, Mr. Young requested a nine-month extension of his enlistment from April 2005 to January 2006. The nine-month extension would have satisfied his obligation to obtain retainability allowing for his date of separation to coincide with the projected duration of the PCS. Additionally, on January 21, 2003, Mr. Young requested that the AF change his "report not later than date" of January 30, 2003 to a later date. This was denied.

Subsequently, Mr. Young refused to sign AF Form 964, entitled "PCS, T[emporary Duty], Deployment, or Training Declination Statement," ("AF Form 964" or "declination statement") a form used to decline retainability for a PCS and to acknowledge the consequences that accompany declination. Nevertheless, Military Personnel Flight officials executed Mr. Young's declination statement and indicated on the form as follows: "[Mr. Young] has refused to sign this document confirming his decision to decline to obtain retainability and acknowledging he is ineligible for promotion and ineligible to extend his enlistment or reenlist for a period of 93 calendar days after separation." Administrative Record ("A.R.") 30. The Military Personnel Flight officials also hand-wrote: "[Mr. Young] understands the above statement, so verbally stated by him . . . ." A.R. 30. As a result, an assignment declination code was placed in Mr. Young's personnel record. On January 21, 2003, 2nd Lt. Stephens issued a letter of reprimand to Mr. Young for failure to obey the January 14, 2003 order to contact personnel at his outbound and inbound assignments. Because Mr. Young declined to obtain retainability to PCS, his assignment to Eielson, AFB was cancelled.

In December 2002 and January 2003, Mr. Young filed complaints with the Installation Inspector General at

Nellis AFB. One complaint contained "allegations of unjust assignment selection process and non-compliance with DOD Directives." A.R. 129. On January 15, 2003, the Installation Inspector General concluded that "[t]he preponderance of evidence revealed the assignment selection process used to select you for reassignment to Eielson AFB to be both equitable and in compliance with directives and policy." A.R. 130.

In his second complaint to the Installation Inspector General, Mr. Young alleged that he had endured "reprisal" for complaints concerning his PCS assignment. A.R. 136. In particular, Mr. Young alleged that the members of his chain of command lowered his 2002 Enlisted Performance Report rating from "5" to "4" in retaliation for his complaints concerning his assignment to Alaska and denied Mr. Young an Air Force Commendation Medal without justification. A.R. 136.

In April 2003, the Installation Inspector General found that a preponderance of evidence showed that the Enlisted Performance Report rating of "4" would not have been different even if the alleged protected communication—Mr. Young's complaints about his assignment to Alaska—had not been made. A.R. 54. Likewise, the Installation Inspector General determined the Air Force Commendation Medal intended for Mr. Young was cancelled when his PCS assignment was cancelled. A.R. 55. Further, the Installation Inspector General found that the evidence did not substantiate the claim that the letter of reprimand was in retaliation of Mr. Young's complaints.[1] A.R. 55.

---

[1]    In addition to Mr. Young's complaints to the Nellis AFB Installation Inspector General, the Department of Defense ("DoD") Inspector General indicated in a January 2004 letter responding to a congressional inquiry that he

In August 2003, Mr. Young was given a letter of counseling. The letter informed him of procedures and standards for withdrawing his retainability declination statement. He refused to sign the letter of counseling.

Thereafter, Mr. Young filed a petition with the Air Force Board for Correction of Military Records[2] ("Correc-

had conducted a "preliminary inquiry" into Mr. Young's allegation of retaliation. A.R. 48. The letter stated: "Our inquiry did not find sufficient evidence to support [Mr. Young's] allegation that he was improperly selected for an involuntary overseas assignment and that the Military Personnel Flight processed his declination for the assignment in reprisal for making protected communications." A.R. 48. The DoD Inspector General also agreed with the Installation Inspector General's response to Mr. Young's complaints. A.R. 49. Also, the Deputy Chief of the Office of Legislative Liaison of the Air Force responded to a similar congressional inquiry, in which it was reiterated that Mr. Young's allegations were unsubstantiated. A.R. 131.

[2] When a service member is involuntarily discharged or improperly denied a promotion, he or she may pursue: (1) a correction of military records under 10 U.S.C. § 1552(a); or (2) a suit under the Tucker Act in the Claims Court. *Richey v. United States*, 322 F.3d 1317, 1323 (Fed. Cir. 2003). If a service member initially elects to pursue a remedy before the Correction Board, the service member may seek review of the Correction Board's final decision at the Claims Court. *Id.* The military correction boards are civilian boards, through which the Secretary of a military department "may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). In carrying out its function, the Correction Board must determine "whether the applicant has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record and, if so, what

tion Board") in September 2004 and an amended petition in February 2005.  Mr. Young alleged that his selection for PCS, the assignment declination code in his personnel records, and the impending discharge resulting from his failure to obtain retainability were all improper.[3] *See* A.R. 13

On March 10, 2005, the Correction Board concluded that there was insufficient evidence to demonstrate the existence of error or injustice. A.R. 9.  As a result, the Corrections Board denied Mr. Young's request for relief in its entirety. A.R. 9.  On April 12, 2005, Mr. Young's date of separation from active duty, he was honorably discharged.  At the time of his discharge, Mr. Young held a rank of E-5.

On April 11, 2011, Mr. Young instituted the Claims Court action claiming wrongful discharge and improper

---

corrections are needed to provide full and effective relief." 32 C.F.R. § 865.4(h)(4).

[3]    Mr. Young requested that the following be removed from his record: (1) AF Form 964 and other records pertaining to his failure to obtain retainability for the PCS; (2) Enlisted Performance Reports for 2002 to 2004; (3) the letter of reprimand for failure to obey an order; (4) the letter of counseling relating to withdrawal of AF Form 964; and (5) any other "derogatory" material relating to the PCS.  He also sought reinstatement of his eligibility to reenlist, to extend his enlistment, or to be promoted. Additionally, Mr. Young requested a promotion to E–6 or E–7 with back pay, allowances, interest, and an assignment to his base of preference, "5" ratings for the Enlisted Performance Reports for 2002 to 2004 as opposed to the "4" ratings he received, and an Air Force Commendation Medal. A.R. 3,13.  Mr. Young further sought reinstatement to the position of noncommissioned officer in charge. A.R. 13.

denial of a promotion.[4] Compl. ¶ 1; Am. Compl. at 1. Specifically, Mr. Young claims, *inter alia*, that the Air Force violated AFI 36-2110 by: (1) improperly administering the PCS selection process; (2) requiring Mr. Young to obtain retainability after 30 calendar days upon official PCS notification; and (3) executing the PCS declination statement without his consent. Mr. Young likewise questions the accuracy of his Enlistment Performance Reports from 2002 to 2004 and alleges that he was advised by "AF Area Defense Legal Counsel" to "not to do anything concerning the PCS overseas assignment."[5]

On March 6, 2012, the Claims Court granted the Government's motion to dismiss Mr. Young's wrongful discharge and denial of promotion claims under RCFC

---

[4] While an amended complaint normally is deemed to supersede any previously filed complaint, we liberally construe Mr. Young's pro se pleadings and assume for purposes of this opinion that he intended to supplement the original Complaint when an Amended Complaint was filed on August 29, 2011. Accordingly, we reference both the Complaint and the Amended Complaint in support of this decision.

[5] Mr. Young seeks various forms of relief, which mirror what he sought at the Correction Board: (1) back pay and allowances retroactive to April 12, 2005 calculated up to E–7 rank; (2) back pay and allowances retroactive to January 21, 2003 calculated up to E–7 rank; (3) promotion to E–7 rank; (4) additional active duty service credit calculated to six years; (5) reinstatement to active duty if necessary; (6) "[r]etirement rank E–7 and pay status at 24 years high year tenure total active duty service credit & associated DD–214 to reflect status"; (7) removal of any reference or record of the assignment declination and the "associated re-entry code"; and (8) removal of the Enlisted Performance Reports for 2002 to 2004. Compl. at 5-6.

12(b)(6).[6] *Young*, 2012 WL 758058 at *1. In addition, the Claims Court, sua sponte, dismissed Mr. Young's remaining claims for equitable relief for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) and 12(h)(3). *Id.* Mr. Young filed a motion for reconsideration, which was denied on June 26, 2012. Appellee's Appendix ("App.") 21, Dkt. No. 32. He appeals the Claims Court's decisions. We have jurisdiction under 28 U.S.C. 1295(a)(3).

DISCUSSION

A.  Tucker Act Jurisdiction

We review the Claims Court's decision pertaining to subject matter jurisdiction *de novo. Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The Tucker Act, 28 U.S.C. § 1491, authorizes actions for monetary relief against the United States to be brought in the Claims Court. The Tucker Act itself, however, does not provide a substantive cause of action absent a money-mandating statute. *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc).

In the context of wrongful discharge claims, the applicable money-mandating statute that is generally invoked,

---

[6]    On July 11, 2011, the Government filed a motion to dismiss Mr. Young's Complaint under RCFC 12(b)(1) or, in the alternative RCFC 12(b)(6) or, in the alternative, for judgment on the administrative record under RCFC 52.1. App. 19, Dkt. No. 8. Mr. Young opposed and the Government replied. On September 27, 2011, Mr. Young filed an Amended Complaint expressly asserting jurisdiction under the Tucker Act, 28 U.S.C. § 1491, and a cause of action under the Military Pay Act, 37 U.S.C. § 204. App. 20, Dkt. No. 20. The Government filed a new motion to dismiss under RCFC 12(b)(6) or, in the alternative, a motion for judgment on the administrative record under RCFC 52.1, Appellee's Appendix 20, Dkt. No. 21. The Claims Court granted this motion.

as here, is the Military Pay Act, 37 U.S.C. § 204. *Martinez*, 333 F.3d at 1303. The Military Pay Act sets forth entitlements to basic pay to members of a uniformed service. 37 U.S.C. § 204(a). Therefore, to properly ground a wrongful discharge claim in the Military Pay Act, a plaintiff must allege that, because of the unlawful discharge, the plaintiff is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge. *Martinez*, 333 F.3d at 1302. The Military Pay Act also is the applicable money-mandating statute invoked in cases where redress may be afforded for a promotion improperly denied. *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004) (allowing the Military Pay Act to be the basis for an improper denial of a promotion claim).

Here, Mr. Young seeks back pay for the alleged involuntary discharge. Compl. at 5-6. He also seeks redress for the alleged improper denial of promotion based on what Mr. Young characterizes as the Air Force's *"fail[ure] to follow its own mandated Assignment Instruction* [AFI 36-2110] in administering an overseas PCS assignment to Alaska." Compl. ¶ 1 (emphasis in Complaint). Thus, for purposes of determining Tucker Act jurisdiction, Mr. Young's allegations are well-grounded in the Military Pay Act. In addition, the parties do not dispute that these claims were asserted within the Tucker Act's six-year statute of limitations. Accordingly, the Claims Court properly exercised subject matter jurisdiction over Mr. Young's wrongful discharge and improper denial of promotion claims.

Mr. Young's remaining claims and requests for relief can be liberally construed to sound in equity. Although the Claims Court does not have general equity jurisdiction, the Tucker Act provides that in cases based on actions for monetary relief, the Claims Court may issue

such orders as are necessary "[t]o provide an entire remedy and to complete the relief afforded by the judgment," including, "as an incident of and collateral to any such judgment, . . . orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1491(a)(2).   Because Mr. Young's money-mandating claims are meritless for the reasons below, the Claims Court did not err in dismissing claims for equitable relief for lack of subject matter jurisdiction.

B.   Judgment on the Administrative Record Under RCFC 52.1[7]

1.   Standard of Review

This court reviews a grant of judgment upon the administrative record without deference, applying the same standard of review that the Claims Court applied. *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011).  A motion for judgment on the administrative record under RCFC 52.1 provides a procedure for parties to seek the equivalent of an expedited trial on a

---

[7]   Although the Claims Court fashioned its decision pursuant to RCFC 12(b)(6), the parties presented and the Claims Court considered matters beyond Mr. Young's pleadings.  Namely, the Claims Court derives its decision, in part, from the administrative record on file.  Accordingly, we treat the Claims Court's decision as a judgment on the administrative record under RCFC 52.1, which the Government argued as an alternative basis for dismissal at the Claims Court. *Cf. Brubaker Amusement Co., Inc. v. United States*, 304 F.3d 1349, 1355 (Fed. Cir. 2002) ("[T]he trial court may convert a motion to dismiss into a motion for summary judgment under RCFC 56 if it relies on evidence outside the pleadings.").

"paper record, allowing fact-finding by the trial court."[8] *Bannum v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Involuntary discharge actions often necessitate review of the underlying military correction board decisions. *Martinez*, 333 F.3d at 1313-14. Challenges to such decisions are "limited to determining whether a decision of the [C]orrection [B]oard is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983).

"[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson*, 988 F.2d at 1204. Without "cogent and clearly convincing evidence," our deferential standards of review require affirming the dismissal of Mr. Young's claims. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quoting *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973)).

2. Mr. Young's Claims

Mr. Young was ineligible for promotion or reenlistment because he declined to obtain retainability for his PCS assignment to Eielson AFB, Alaska. *See* AFI 36–2110 ¶ 2.29.6.3.1. Hence, Mr. Young's allegations per-

---

[8] Unlike summary judgment standards, genuine issues of material fact do not preclude a judgment on the administrative record. *See Bannum v. United States*, 404 F.3d 1346, 1355-56 (Fed. Cir. 2005). Instead, the trial court resolves questions of fact with references to the administrative record. *Id.* at 1356. In such instances, the Claims Court may make factual determinations and legal conclusions based on the administrative record in the first instance. *Id.* at 1354. This court reviews such factual determinations for clear error and legal conclusions without deference. *Melendez Camilo*, 642 F.3d at 1044.

taining to his involuntary discharge and denial of promotion claims turn on the propriety of his selection for the PCS assignment, the resulting execution of a PCS declination statement, and the corresponding declination code in his personnel file. We examine these issues in turn.

Mr. Young's PCS selection was proper. The Correction Board found unpersuasive Mr. Young's allegations that he was selected improperly for the PCS assignment. A.R. 9. In particular, the Correction Board determined that Mr. Young received notification of his selection for PCS assignment on July 3, 2002 as the most eligible non-volunteer. A.R. 5. There were twelve people above Mr. Young on the list of eligible non-volunteers. A.R. 5. Eight of those were on controlled tours, three were high year of tenure restricted, and one did not meet the time on station requirements. A.R. 5. According to the Correction Board, that left Mr. Young as the most eligible from the list. A.R. 5. The Nellis AFB Installation Inspector General's and the DoD Inspector General's investigations revealed the same. A.R. 48, 130. Thus, substantial evidence supports the Correction Board's determination that the process involved in selecting Mr. Young for PCS was not erroneous or unjust.

Furthermore, the execution of the PCS declination statement and the corresponding declination code in Mr. Young's personnel record were administered properly. The Correction Board indicated that it was not persuaded the PCS declination statement was erroneous or unjust. A.R. 9. In response to Mr. Young's argument that the Air Force failed to comply with its own mandated instructions regarding retainability, the Claims Court reviewed AFI 36-2110 and found nothing suggesting that the Military Personnel Flight loses authority to conduct a retainability interview and to require a service member to obtain retainability beyond the thirty days after notification.

*Young*, 2012 WL 758058 at *12. Rather, the Claims Court found that the Military Personnel Flight acted within its authority in requiring Mr. Young to acknowledge that he had read and fully understood the applicable provisions of AFI 36–2110 pertaining to retirement options and PCS declination. *Id.*

Specifically, among other relevant sections of AFI 36-2110, ¶ 2.33.4.5, regarding Permanent Change of Station notification, states:

> Airmen who do not have the required retainability (see paragraph 2.29) and who accept the assignment . . . and want to obtain retainability must sign and return the notification in person to the [Military Personnel Flight] within 7 calendar days. The [Military Personnel Flight] will [schedule] airmen to obtain retainability at the earliest possible date, but not later than 30 calendar days after the date airmen acknowledged selection. The [Military Personnel Flight] will [reclaim] the assignment and have the enlisted Airman sign an AF Form 964 if they fail to obtain the required retainability within 30 days of notification. If the enlisted Airman refuses to sign AF Form 964, then the [Military Personnel Flight] will take action according to paragraph 2.29.6. The [Military Personnel Flight] will not execute the AF Form 964 without the member's knowledge.

As the AFI instructs, Air Force officials here promptly notified Mr. Young of his PCS assignment. The Correction Board noted that while Mr. Young acknowledged receipt of the notification of his PCS assignment on July 8, 2002, he did not report to the relocation briefing that was scheduled for July 16, 2002. A.R. 5. Although Mr. Young seems to suggest that Air Force officials "discon-

tinued processing" his PCS assignment at or about this time, the Correction Board noted that during this period Mr. Young was informed on four separate occasions that his PCS assignment was valid. A.R. 5.

Nearly six months after his PCS assignment notification and upon receiving direct orders by his chain of command to report on the status of his PCS assignment, Mr. Young finally met with Military Personnel Flight officials on January 17, 2003. A.R. 5. After the Air Force declined to change his "report not later than date," Mr. Young refused to proceed further in obtaining retainability. Mr. Young also refused to sign the declination statement. As a result, on January 21, 2003, Military Personnel Flight officials properly executed the declination statement in his absence. *See* AFI 36-2110 ¶ 2.29.6.3.1. (If the career airman refuses to sign AF Form 964, the Military Personnel Flight will administer the form on behalf of the career airman with an accompanying statement signed by the person who counseled the airman.). Thus, substantial evidence supports the Correction Board's determination that Mr. Young's PCS declination statement and the corresponding declination code were not erroneous or unjust.

Because the assignment declination code was appropriate, Mr. Young was not entitled to reenlistment or a promotion prior to his date of separation on April 12, 2005. *See Dodson*, 988 F.2d at 1208 (holding that no serviceperson has a right to enlist or to reenlist in the armed forces "unless specially granted one"); *see also Dysart*, 369 F.3d at 1313-15 (requiring a clear legal right to a promotion to successfully assert a denial of a promotion claim). Consequently, his requests for a retroactive promotion and back pay fail. As to Mr. Young's remaining requests for relief, the Claims Court lacked subject matter jurisdiction. In particular, Mr. Young's requests

for reinstatement to active duty, removal of the assignment declination code, and related materials from his personnel record sound in equity and are not incidental to a money-mandating claim.[9]  For the foregoing reasons, the Correction Board determinations were not arbitrary, capricious, or contrary to law.  Accordingly, we affirm the Claims Court's dismissal of this case in its entirety.[10]

## AFFIRMED

---

[9]  Even if the Claims Court had jurisdiction, these claims are without merit.  With respect to Mr. Young's alleged inaccurate Enlisted Performance Reports from 2002 to 2004 and his alleged wrongful denial of an Air Force Commendation Medal, the Correction Board reasonably found that there was no evidence of impropriety as to either allegation. A.R. 9.  Mr. Young claims to have been advised by "AF Area Defense Legal Counsel" and other superior officers and enlisted personnel to "not to do anything concerning the PCS overseas assignment." Am. Compl. at 2-3.  To the extent Mr. Young is claiming ineffective assistance of counsel with this allegation, we agree with the Claims Court in finding that this claim, even if it was pled sufficiently, is meritless. *Young*, 2012 WL 758058 at *10.

[10]  Furthermore, we affirm the Claims Court's decision denying Mr. Young's motion for reconsideration.  We review the Claims Court's denial of a motion for reconsideration under RCFC 59(a)(1) for abuse of discretion. *Renda Marine, Inc. v. United States*, 509 F.3d 1372, 1379 (Fed. Cir. 2007).  We also review a denial of a motion for relief from judgment under RCFC 60(b) for abuse of discretion. *Info. Sys. & Networks Corp. v. United States*, 994 F.2d 792, 794 (Fed. Cir. 1993).  Here, the Claims Court denied Mr. Young's motion, in part, because he was rearguing the voluntariness of his discharge based on theories or evidence that he could have raised previously. App. at 16, 21.  Accordingly, the Claims Court's decision denying Mr. Young's motion was not an abuse of discretion.