Mark B. LEWIS, Plaintiff,

v.

John O. MARSH, et al., Defendants.

Civ. A. No. 86–2566.

United States District Court,
District of Columbia.

Oct. 20, 1987.

Bruce Stevenson, Alexandria, Va., for plaintiff.

Jeffrey Hunter Moon, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

Plaintiff appeals a final decision of the Secretary of the Army which upheld the imposition of a fine and the dismissal of the plaintiff, Sergeant Mark B. Lewis from Officer Candidate School (OCS) as the result of an alleged drunk driving incident that occurred on May 8, 1982. For the reasons outlined, I find that decision was arbitrary and capricious and was not supported by substantial evidence. Therefore, the decision of the Secretary is reversed and an Order shall be entered granting plaintiff relief.

### I. *Facts*

Plaintiff enlisted in the United States Army Reserve in November 1981, with an understanding that he would be sent to Officer Candidate School. His OCS class commenced on March 14, 1982 at Fort Benning, Georgia. On May 8, 1982, at approximately 3:30 in the afternoon, an off-duty military policeman at Fort Benning suspected plaintiff of driving under the influence of alcohol; he was apprehended and taken to the hospital for a blood alcohol test. Before the test could be taken, though, plaintiff departed from the hospital. He was later picked up by the military police and charged with the offense of driving under the influence of alcohol.

In lieu of a court-martial, plaintiff was induced to waive his right to demand a formal trial and instead agreed to have his case disposed of under 10 U.S.C. § 815, which is the "minor violation" or "non-judicial punishment" ("NJP") route. According to the government's brief:

> Non-judicial punishment is used by a commanding officer under his authority to discipline members of his command *for minor acts of misconduct without resort to court-martial.* The legal basis

for this authority is found in Article 15, Uniform Code of Military Justice (UCMJ); therefore, non-judicial punishment is referred to as "an Article 15." Article 15 of the U.C.M.J. is codified at 10 U.S.C. § 815. A soldier has the right to demand trial by court-martial and not accept the Article 15; plaintiff did not do that, but rather chose to accept non-judicial punishment but decided to appeal the penalty assessed against him. (Emphasis supplied.)

Defendants' Statement of Material Facts as to Which There is No Genuine Issue at 3, fn. 1.

Pursuant to Article 15, the commanding officer possesses only limited disciplinary authority—he can impose only "minor" punishments. *See generally* 10 U.S.C. § 815(b)(2). In fact, Article 15 places quite a low ceiling on the penalties that can be meted out as NJP—dismissal from OCS is not within the disciplinary authority accorded the commanding officer by Article 15.[1] Sergeant Lewis, by deciding to accept punishment through the Article 15 procedure, gave up important procedural rights—specifically his right to a court martial and the formal procedural protections attendant upon that adversary process. Among the rights he gave up was the right to a hearing presided over by a carefully selected panel of impartial judges, the right to an appointed military counsel, (selected by the plaintiff if such a lawyer is "reasonably available"), or the right to retain civilian counsel at his own expense. In addition, Sergeant Lewis gave up his right to confront and cross examine his accusers. *See generally* Arts. 16, 25, 27(b), 27(c), 38(b), UCMJ, 10 U.S.C. §§ 816, 825, 825(b), 827(c), 838(b). In return for voluntarily relinquishing his due process rights, Sergeant Lewis was led to believe that he was at risk of receiving only a minor punishment under Article 15—for what all parties agreed at this point in time was at worst a minor offense.

An additional reason why Sergeant Lewis elected to accept an Article 15 NJP was

---

1. *See also Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 1286, n. 9, 47 L.Ed.2d 556 (1976)

(listing maximum punishments which may be imposed pursuant to Article 15).

his desire to avoid the disruption and delay he feared would accompany a court martial proceeding. He was due to graduate from OCS shortly and he wanted to stay on schedule with his classmates. He therefore decided to accept an Article 15 punishment—despite his consistent and firm assertion that he had not been driving under the influence of alcohol the afternoon of May 8, 1982.

Sergeant Lewis justifiably believed that a fair deal had been struck. At no point in time did Sergeant Lewis contemplate that his acceptance of an Article 15 NJP would ultimately lead to his dismissal from OCS without a hearing. Had Sergeant Lewis at any time been aware of such a possibility, the record indicates that he would not have waived his right to due process safeguards.

According to the facts set forth by the government, on June 10, 1982, Commander of the School Brigade, Colonel Robert S. Rose, decided plaintiff's non-judicial punishment would be the forfeiture of $321.00 for one month and a reprimand.[2] Sergeant Lewis was informed of this NJP on June 10, 1982 by Commander Rose. After the decision, plaintiff continued in Officer Candidate School in preparation for his graduation on June 18, 1982. Plaintiff had compiled a course average of 92.72% and was due to graduate 26th in a class of 151.

The day before the graduation, Colonel Rose—the same officer who had handed out plaintiff's "non-judicial punishment" a week earlier—directed that the plaintiff be dismissed from OCS because of "his unbecoming conduct on May 8, 1982, which seriously places his level of maturity, judgment, and reliability in question for commissioning as an officer in the U.S. Army." Commander Rose characterized his dismissal of Sergeant Lewis from OCS not as a punishment, but as an independent action, wholly apart from the NJP already administered. *See* Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment ("Def. Br."), Exhibit C at 4.

Plaintiff applied for relief to the Army Board for Correction of Military Records ("ABCMR" or "the Board"), 10 U.S.C. § 1552, on November 12, 1983. He asked that his Article 15 (non-judicial punishment) be rescinded, that Commander Rose's dismissal of him from OCS be corrected and that he be commissioned as an Army officer. After a full hearing on the merits on March 13, 1985—at which plaintiff was represented by counsel—the ABCMR made the following finding:

1. That all of the Department of the Army records pertaining to MARK B. LEWIS be corrected: (a) by setting aside the non-judicial punishment under Article 15, Uniform Code of Military Justice, which he received on 10 June 1982, and by restoring to him all rights, privileges and property he lost as a result thereof; and (b) by removing from his Official Military Personnel File the record of proceedings under Article 15, Uniform Code of Military Justice, dated 10 June 1982, and all documents related thereto.

2. That he be tendered an appointment in the grade of second lieutenant in the United States Army Reserve, with concurrent entry on active duty, effective the date of this action.

Def. Br., Exhibit C at 202.

On May 22, 1985, the Board's recommendation was rejected by Deputy Assistant Secretary of the Army John Matthews, acting on behalf of the Secretary of the Army. Matthews found that the non-judicial punishment was properly imposed. He also found that plaintiff was properly removed from OCS because, at the time of his arrest on the driving charges, plaintiff argued with police, refused to submit to a blood alcohol test, and left the medical facility without permission. *Id.* at 203–204. Matthews wrote that in his judgment, "such behavior raises serious questions as to [plaintiff's] maturity and fitness to accept and execute the responsibilities of a commissioned officer." *Id.* In short, Matthews found that what Commander Rose characterized as a two-part disposition was appropriate—non-judicial punishment for the drunk driving incident in the form of a

---

2. Plaintiff appealed this punishment, but his appeal was denied by the Staff Judge Advocate at Fort Benning who determined that the punishment was appropriate.

fine and a reprimand, and removal from OCS for unbecoming conduct. *Id.* The latter action was specifically deemed not to be the imposition of a penalty. It was considered solely a matter relating to the qualifications of the plaintiff to be an officer.

On September 16, 1986, plaintiff filed this complaint seeking review of this determination by the Secretary of the Army.

## II. *Jurisdiction and Standard of Review*

■ The Secretary's denial of an application for correction of Army records is a final agency action subject to review under the standards of the Administrative Procedure Act. *See Miller v. Lehman,* 801 F.2d 492, 496 (D.C.Cir.1986). Accordingly, I must decide whether the decision of the Secretary was "arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law," or whether the decision was "supported by substantial evidence." 5 U.S.C. § 706(2)(A), (E); *Miller v. Lehman,* 801 F.2d at 496.[3]

## III. *Analysis*

In essence, plaintiff seeks review of the Secretary's final decision upholding the non-judicial punishment imposed on plaintiff and the Secretary's upholding of plaintiff's separation from OCS. I will consider each in turn. I will then consider the fairness of the two actions when they are considered together.

3. The government's lengthy discourses on jurisdiction and reviewability notwithstanding, it is settled law that I have the authority to review the Secretary's decision under a "substantial evidence" standard. *See generally Matlovich v. Secretary of Air Force,* 591 F.2d 852, 859 (D.C. Cir.1978); *Neal v. Secretary of Navy,* 639 F.2d 1029, 1036–38 (3rd Cir.1981); *Wronke v. Marsh,* 603 F.Supp. 407, 410–11 (C.D.Ill.1985) and cases cited therein.

Furthermore, the Secretary of the Army himself has repeatedly stated that Sergeant Lewis may seek review of the Secretary's decision in a federal court of competent jurisdiction. *See e.g.,* Letter of September 10, 1985 from Delbert L. Spurlkock, Jr., Assistant Secretary of the Army to Colonel Frederick W. Johnston, III; Letter of October 11, 1985 from Mr. Spurlock to Senator Strom Thurmond, then President Pro

## A. *The Non-Judicial Punishment*

■ As to the non-judicial punishment (NJP): there is considerable doubt in the record concerning whether plaintiff was indeed drunk on May 8 and thus whether NJP was properly imposed on him. For instance, the administrative record reflects letters from no fewer than twenty-four (24) persons who swear they witnessed plaintiff's behavior at the time in question and believed him to be not intoxicated. Def. Br., Ex. C at 31–59. Moreover, the Board, which reviewed the evidence, found as follows:

> ...[I]n this case, it appears there was little, if any, credible evidence that the applicant was drunk. He was not administered a blood alcohol test and there was only one military policeman who stated that the applicant appeared to be under the influence of alcohol. This was contradicted by the statements of numerous officers and officer candidates, including one who was a passenger in the applicant's vehicle. Accordingly, it appears to the Board that there should have been reasonable doubt in the mind of the commander. For these reasons, and notwithstanding the opinion rendered in this case by OTJAG, it appears in the interest of justice, the NJP should be set aside.

Def. Br., Exhibit C at 201. These findings support the conclusion that the Commander's issuance of the NJP—which had to result from the Commander's adjudication of plaintiff's guilt "beyond a reasonable doubt," see fn. 1, *supra* —was not justified

Tempore of the Senate and Chairman of the Armed Services Committee. Although I recognize the Army's right to contest jurisdictional issues at any stage of a federal litigation, I am troubled that Senator Thurmond, Colonel Johnston and other elected officials and officers who have expressed support for Sergeant Lewis may have been misled by Mr. Spurlock into believing that the Army was prepared to let Sergeant Lewis have "his day in court" in the form of a substantive review of the Secretary's decision. At the point in time that the Army decided to challenge this court's jurisdictional authority, I believe that it at the very least had an obligation to inform Senator Thurmond, Colonel Johnston and other supporters of Sergeant Lewis that the Army was seeking to deny him his promised "day in court."

by substantial evidence in the record. Because of the absence of substantial evidence, the Secretary's failure to correct the injustice imposed on Sergeant Lewis was "arbitrary and capricious." Furthermore, I find that the Secretary's decision was conclusory and without evidentiary support—whereas the ABCMR's decision is far better reasoned and is far better supported by the facts. 5 U.S.C. § 706(2)(A).

### B. *The Dismissal From OCS*

■ The second action taken—Commander Rose's decision to remove plaintiff from OCS—must also be corrected because it was arbitrary and capricious. Consider the facts put forth by the government: first, based on the original incident of May 8, the plaintiff submitted himself voluntarily to non-judicial punishment. In so doing, he gave up important procedural rights. The NJP (the forfeiture of $321 and a reprimand) was levied on June 10, 1982. Plaintiff then proceeded on the obvious assumption that this punishment was the complete consequence of his actions on May 8.[4] The Commander did nothing to disabuse him of that notion. He permitted plaintiff to continue in OCS, from which the plaintiff believed he was due to graduate (notwithstanding the NJP) on June 18. *The day before his graduation, and a full week after the NJP decision was issued,* plaintiff was removed from OCS. This cruel and unusual act by the Commander exposed plaintiff—without any notice or an opportunity to be heard[5]—to a second punishment for the single set of events of May 8 for which he had already submitted to an NJP and for which he had already been punished. There is simply no acceptable explanation for such action.[6]

What is worse than the procedural defects in Commander Rose's actions is that, even assuming the Commander had a right to subject the plaintiff to this form of double jeopardy, his second action (removal of Sergeant Lewis from OCS), was itself not supported by substantial evidence. Again, I rely on the Board's findings:

1. The applicant's record in OCS was outstanding. He completed the entire course, and in the opinion of those officers in a position to best observe him, he was deserving of a commission. To terminate him from OCS, one day before he would have been commissioned appears to have been untimely and inappropriate.

---

4. Had plaintiff actually been guilty of the offense with which he was charged, such a punishment would seem to me to be an appropriate and complete response.

5. Although the school commander "may relieve a candidate whenever a lack of aptitude or qualification for commissioning has been determined," Army Regulation 351–5 (October 15, 1984), Pl. Opposition to Def. Motion to Dismiss or, in the Alternative, for Summary Judgment, Ex. 9 at 10, this determination must be consistent with Army regulations, and specifically must "include notice of the deficiency and an opportunity to respond before a decision is made on relief from OCS." *Id.* Because plaintiff was not afforded these protections, Army regulations were clearly not followed in his removal from OCS.

Commander Rose's abrupt dismissal of plaintiff from OCS was not only in direct contravention of Army regulations—but because those regulations were clearly designed to protect plaintiff's basic (due process) rights of notice and the opportunity to be heard—plaintiff's dismissal was accomplished in a manner that violated basic concepts of fairness and procedural due process.

6. The government attempts to explain the second action as justified by the plaintiff's conduct beyond the mere drinking on May 8. However, even accepting this explanation, the government cannot explain why the Commander waited seven additional days, until the threshhold of plaintiff's graduation, to act. If, as is asserted, more time was needed to investigate the charges, then how could the Commander have satisfactorily meted out the NJP—based on the same set of occurrences—some seven days earlier? Surely if seven additional investigative days were needed, they were needed to investigate the drinking incident as well. In short, the government's contentions with regard to the two actions do little to rebut the characterization of the Commander's conduct as capricious. Furthermore, the government never attempts to explain why Sergeant Lewis was denied his right to notice and an opportunity to be heard regarding the second, independent action. After all, plaintiff may very well have been acquitted of the underlying driving under the influence offense had he been properly tried—certainly he deserves an opportunity to be heard regarding the even more uncertain and vague allegations about "unbecoming conduct" before he is summarily dismissed from OCS.

2. The Board is impressed with the applicant's mature acceptance of the disappointment of not being commissioned with his OCS class. The manner in which he accepted his enlisted status and the way in which he performed those duties are positive indications of his character and reflect favorably on his fitness to serve as a commissioned officer. Accordingly, it appears he should now be tendered a commission.

Def. Br., Ex. C at 200–201.

It is clear to me that this neutral and detached Board carefully and thoroughly considered this matter and its decision is deserving of great weight. At the least, the Secretary had the responsibility to fully explain his rejection of the Board's findings, conclusions and recommendations. This he has failed to do adequately. The record strongly supports the Board's conclusion that the plaintiff is a distinguished officer candidate.

Therefore, each of the actions examined independently do not withstand the scrutiny of this court and must be struck down as arbitrary and capricious and not supported by substantial evidence.

### C. *The Two Actions Considered Together*

There is much nore to this case. The two actions considered together *and* the manner in which the relationship between them was presented to Sergeant Lewis and this court was manifestly inaccurate. Simply put, the facts need to be carefully reconsidered in order to avoid a grave miscarriage of justice.

At the hearing held on cross-motions for summary judgment, I extensively questioned the government about the facts. At the time, it seemed odd to me that what plainly appeared to be a double sanction for a single act was presented by the government as two separate, distinct actions. At argument, the government stuck with this seemingly illogical version of the facts despite my persistent questioning. *See also* Defendants' Statement of Material Facts as to Which There is No Genuine Issue, at 3. I continue to believe that the government's version of the facts makes little

logical sense. More important, I now conclude that the facts set forth by the government are directly contradicted by a document uncovered by the court's full review of the record below. The critical document, which was not brought to my attention at any time during these proceedings, and apparently was not discovered by the ABCMR, is a June 11, 1982 document entitled, "Commander's Report of Disciplinary or Administrative Action." ("The Commander's Report") *See* Def. Br. Ex. C at 7.

The Commander's Report was executed on June 11, 1982, a day after plaintiff received his NJP. It is obvious that the purpose of the Commander's Report was to memorialize the punitive action imposed on plaintiff as NJP the day before. As can plainly be seen from the June 11, 1982 report, the punishment was detailed and was not limited to the imposition of a fine and a reprimand, as was told to the plaintiff and represented to this Court, but also included demoting the plaintiff from OC–5 to E–3 status and specifically provided for the plaintiff's removal from Officer Candidate School. The Commander's Report makes crystal clear that the NJP included both a fine and the removal of plaintiff from OCS.

In contrast, the Memorandum Opinion issued by Deputy Assistant Secretary of the Army John W. Matthews to the ABCMR, which sets forth the reasons for rejecting the ABCMR's recommendation, unequivocally asserts that plaintiff's removal from OCS was not part of the NJP taken on June 10, 1982 but rather, was a separate and distinct action that went to plaintiff's fitness to be an officer.

■ I find that the Assistant Secretary's decision fails to take into account the Commander's Report—and hence is not based on an accurate accounting of the record below. The Commander's Report precludes the conclusion reached by the Assistant Secretary. The Assistant Secretary's decision therefore is unacceptable and must be set aside as arbitrary and capricious.

The Commander's Report document irrefutably and plainly reveals that Sergeant Rose was actually "relieved from Officer Candidate School" as part of his punishment pursuant to Article 15 (NJP). Contrary to Commander Rose's representations to Sergeant Lewis, the ABCMR and ultimately to the office of the Secretary, Sergeant Lewis actually was dismissed from OCS as part of his Article 15 punishment for the single driving incident. Sergeant Lewis' dismissal was not a second, independent punishment rendered on June 17, 1982 for Sergeant Lewis' allegedly "unbecoming conduct." Rather, the Commander's Report shows that Sergeant Lewis was slated for dismissal from OCS no later than June 11, 1982. The Commander's Report shows without doubt that Sergeant Lewis' NJP was not limited to a fine and a reprimand, but from its inception included removal from OCS and a reduction in grade from OC–5 to E–3.

The discovery of the June 11, 1982 report provides an independent basis why Sergeant Lewis' record must be corrected.

■ First, as noted above, my review of the legal limits placed on a commanding officer's disciplinary authority within an Article 15 or "minor violation" proceeding indicates that a punishment as severe as Sergeant Lewis' dismissal from OCS is beyond the sharply circumscribed scope of the commanding officer's authority. In Sergeant Lewis' case, moreover, the punishment he received actually is more than simply dismissal from OCS and the loss of an *opportunity* to obtain a commission. The timing of his dismissal was tantamount to stripping him of a commission which he had already earned and rightfully deserved. He was only a scant day away from graduating 26th in his 151 person class. In any case, the punishment was not in accordance with the law. It overstepped the limits of Article 15.

In addition, this punishment was portrayed as something that it was not. Perhaps in order to evade the strict limitations of Article 15, Sergeant Lewis' dismissal from OCS, originally part of his NJP, was at some point in time dressed up to masquerade as a second, independent action that was not a punitive measure. The record simply will not support this conversion.

According to the record, Sergeant Lewis' dismissal from OCS was part of his NJP imposed pursuant to Article 15. Such a severe punishment was arbitrary and capricious, not supported by substantial evidence and not in accordance with the law. 5 U.S.C. § 706(2)(A), (E).

■ Second, it is now clear that Sergeant Lewis' waiver of his right to a court martial was neither knowing nor voluntary. Regardless of how the facts are parsed, Sergeant Lewis was misled. He gave up important procedural rights in reliance on what turned out to be false representations that his punishment would be minor. At the time that he submitted himself to an Article 15 proceeding, Sergeant Lewis was aware that Article 15 established plain and cognizable limits on the punishments he could receive. He was induced by Commander Rose and others to give up his important due process rights in return for what he justifiably believed would be a limited punishment, proportionate to the minor nature of his alleged misconduct and the shaky nature of the evidence on which the charges against him were based. Clearly, under no circumstances did he contemplate he would be dismissed from OCS. Sergeant Lewis obviously did not get what he bargained for. Rather, he was slapped with a punishment that went far beyond the scope of Article 15 and was in direct contravention to his understanding of the agreement he made to give up his right to a court martial.

Therefore, even if the Army had been successful in converting what in reality was an Article 15 punishment into an independent "non-punitive action" rendered by the commanding officer pursuant to his discretionary authority, the Army cannot escape the fundamental injustice of Sergeant Lewis' waiver of his procedural rights. I find that Sergeant Lewis neither knowingly nor voluntarily waived his right to a court martial. Because Sergeant Lewis was wrongfully induced into waiving his

right to a court martial, his punishments cannot stand. His dismissal from OCS not only violates the letter of Article 15, it breaches the spirit and the substance of his waiver of his due process rights.

## IV. *Conclusion and Remedy*

I find that even accepting the government's version of the facts, the Secretary's decision was arbitrary, capricious and not supported by substantial evidence. Moreover, the real facts in this case reveal that Commander Rose's actions were not only arbitrary and capricious, but also that his dismissal of Sergeant Lewis from OCS was not in accordance with law. The Secretary's failure to accept the ABCMR's recommendation to correct Commander Rose's actions was therefore arbitrary and capricious and not in accordance with law. Sergeant Lewis' record must be corrected and he must be placed in the position he was in prior to the imposition of the Article 15 sanctions.[7]

Accordingly I am now remanding this case, and ordering the Army to expunge from all records the NJP imposed on Sergeant Lewis and the action taken to remove the plaintiff from Officer Candidate School. I am placing plaintiff back in the position he was in prior to June 10, 1982 and ordering that he be reinstated in OCS with credit for having completed the academic requirements of OCS. If the Army intends to proceed against plaintiff for what took place on May 8, 1982 it may do so by NJP only after it explains fully the maximum punishment that plaintiff may receive if he elects to proceed under Article 15. Otherwise, any intended action to be taken by the Army must be accomplished by a court martial which provides plaintiff with all his due process safeguards. I am also ordering the Army to return the monetary fine to the plaintiff and to return the truck which was impounded pursuant to the report of June 11, 1982. The Army shall have thirty days within which to implement this Order unless for good cause shown it obtains additional time from this Court.

An appropriate Order accompanies this Memorandum Opinion.

### ORDER

For the reasons stated in the Memorandum Opinion dated October 20, 1987, it is this 20th day of October 1987, hereby

ORDERED that plaintiff's motion for summary judgment be granted and that defendant's motion for summary judgment be denied and it is further

ORDERED that all of the Department of the Army records pertaining to MARK B. LEWIS be corrected:

(a) by setting aside the punishment he received under Article 15, Uniform Code of Military Justice, as set forth in the June 11, 1982 "Commander's Report of Disciplinary or Administrative Action," and by restoring to him all rights, privileges and property he lost as a result thereof—including the return of the monetary fine levied on plaintiff; the return of the truck impounded by the NJP; the return of plaintiff to OC-5 status; and the awarding of credit to plaintiff for having completed successfully the academic requirements of OCS and

(b) by removing from his Official Military Personnel File and any other records maintained by the Army the record of proceedings under Article 15, Uniform Code of Military Justice, dated 10 June 1982, and all documents related thereto and his separation from OCS on June 17, 1982 and all documents related thereto; and it is further.

ORDERED that the Secretary of the Army shall take further corrective action in accordance with my Memorandum Opinion, and it is further

ORDERED that if the Army intends to proceed further against the plaintiff for the

---

7. Pursuant to 5 U.S.C. § 706(2), I am authorized to set aside agency actions which are either arbitrary and capricious or are unsupported by substantial evidence. *See also Neal v. Secretary of Navy*, 639 F.2d 1029, 1045 (3rd Cir.1981) (remedy for arbitrary and capricious decision by Secretary of Navy is to place plaintiff into the position he would have been in had the appropriate procedures been followed at the relevant time).

events that took place on May 8, 1982 that it may do so by NJP pursuant to Article 15 only after it first explains to Sergeant Lewis the maximum punishment that he might receive if he elects to proceed in that manner, and it is further

ORDERED that any other action taken by the Army in relation to the events that transpired on May 8, 1982 must be by a court martial which provides plaintiff with full due process safeguards, and it is further

ORDERED that the Secretary of the Army will report back to this court within thirty days as to the actions he has taken and plans to take and that this court shall retain jurisdiction to enter whatever other relief that may be necessary, and it is further

ORDERED that I have scheduled a hearing in this matter on the 25th day of November, 1987 at 10:00 a.m.